STATE OF NORTH CAROLINA v. RONALD ALVIN WEST, DEFENDANT

No. COA94-897

(Filed 18 July 1995)

**Searches and Seizures § 7 (NCI4th)— officer's questions and request to frisk—no unreasonable search and seizure**

A police officer's questioning and request to frisk defendant who had just flown into Raleigh from New York did not constitute a seizure within the purview of the Fourth Amendment right against unreasonable searches and seizures, and the Court therefore need not decide whether the officer had reasonable suspicion to believe defendant was armed and involved in criminal activity when he initiated the pat frisk.

**Am Jur 2d, Searches and Seizures §§ 10 et seq.**

Appeal by defendant from judgment entered 2 May 1994 by Judge Dexter Brooks in Wake County Superior Court. Heard in the Court of Appeals 17 April 1995.

*Attorney General Michael F. Easley, by Associate Attorney General Thomas B. Murphy and Assistant Attorney General Lori Fuller, for the State.*

*Philip O. Redwine; and Kunstler & Kuby, by Ronald L. Kuby and William M. Kunstler, for defendant appellant.*

STATE v. WEST

[119 N.C. App. 562 (1995)]

COZORT, Judge.

Ronald West (defendant) was indicted for trafficking by possession of more than 200 grams but less than 400 grams of cocaine. The trial court denied defendant's motion to suppress evidence. Defendant pled guilty to both counts and received a twenty-year prison sentence and a $100,000 fine. Defendant appeals from the denial of the motion to suppress, and the sole question on appeal is whether the drug agent had reasonable suspicion to believe defendant was armed and involved in criminal activity when he initiated a pat frisk. We hold the agent's questioning and request to frisk defendant did not constitute a seizure, eliminating the question of reasonable suspicion.

On 8 December 1993, Special Agent Bruce Black of the State Bureau of Investigation and Detective E. W. Woodlief of the Wake County Sheriff's Department were assigned to the Drug Interdiction Unit at the Raleigh Durham International Airport (RDU). Agent Black has been assigned to this unit for five years and has over one hundred drug arrests, 95% involving cocaine.

At 7:30 p.m. on this evening, Special Agent Black and Detective Woodlief checked the passenger list for USAir Flight 1687 arriving at RDU from New York City, a "source city" for drug trafficking. The officers examined three different reservations, and one contained the names of defendant and Jason Holness. Black determined that defendant was traveling on a student fare ticket. Defendant's ticket had been paid in cash on or near the date of the flight, and the call back number on the reservation had been disconnected. Black considered these characteristics—travel from a source city, cash paid for tickets, reservations made on or near the day of travel, use of student fare ticket, and a disconnected call back number—in identifying potential drug couriers.

Upon the arrival of Flight 1687, Black and Woodlief witnessed two males, who were carrying a small amount of luggage, walking out of the jetway. Black also observed defendant reach into his pocket and pull out some keys. After all passengers had disembarked, the officers went to the baggage claim area but did not see defendant and Holness. Black stepped outside and saw defendant and Holness walking across the parking lot towards another terminal. The officers followed defendant into a parking deck. The officers, dressed in civilian clothes, approached defendant and Holness as they stood on each

side of a parked car. Black presented his credentials, identified himself as a police officer, and requested to speak to defendant.

Defendant stopped putting items in the car and stood to face Black. Black asked to see defendant's airline ticket and identification, which defendant produced to Black's satisfaction. Both the ticket and identification were in the name of Ron West. Black observed that defendant was extremely nervous, and his hands were shaking. Black told defendant he was conducting an investigation into narcotics coming from New York and asked defendant for consent to search his baggage. Defendant agreed and handed his luggage to Black. As defendant gave his baggage to Black, Black observed defendant's hands trembling and defendant's hands jerked back briefly. This jerking motion startled Black. Concerned for his safety, Black asked defendant for permission to frisk him before checking his baggage. Without responding to Black, defendant ran.

Black chased defendant. During the pursuit, defendant reached into his coat and threw down a plastic bag containing a white substance. Black retrieved this bag and determined the bag contained crack cocaine. Defendant continued to run down the street and attempted to throw a plastic bag into a storm drain. Black called for assistance and was aided by an RDU police officer. After a quarter-mile chase, Black caught up with defendant, ordered defendant to get on the ground, and placed defendant under arrest.

The actual quantity of cocaine was 203 grams. Black charged defendant with trafficking in cocaine by possession of more than 200 grams but less than 400 grams and trafficking in cocaine by transportation of more than 200 grams but less than 400 grams. Defendant was indicted for these offenses on 22 February 1994. Defendant filed a motion to suppress evidence on 10 March 1994. Judge Dexter Brooks heard this matter on 21 March 1994 and denied defendant's motion on 22 March 1994. Defendant pled guilty to both counts of the indictment, and on 2 May 1994 Judge Brooks imposed a sentence of twenty years in prison and a fine of $100,000. On 9 May 1994, defendant gave notice of appeal from the Order denying the motion to suppress. The parties stipulated this issue had been properly preserved for appeal.

Defendant contends Agent Black's attempt to frisk defendant constituted a seizure under the Fourth Amendment of the United States Constitution and Article I, § 20 of the North Carolina Constitution. With respect to state constitutional grounds, defendant

argues that we should reject *California v. Hodari D.*, 499 U.S. 621, 113 L.Ed.2d 690 (1991) and afford greater protection against unreasonable searches and seizures under Article I, § 20 of the North Carolina Constitution than current federal case law provides. Defendant cites to other states which have rejected *Hodari D.* under their state constitutions. *See, e.g., Matter of Welfare of E.D.J.*, 502 N.W.2d 779 (Minn. 1993); *State v. Holmes*, 813 P.2d 28 (Or. 1991); *State v. Oquendo*, 613 A.2d 1300 (Conn. 1992); *State v. Quino*, 840 P.2d 358, *reconsideration denied*, 843 P.2d 144 (Haw. 1992), *cert. denied*, —— U.S. ——, 123 L.Ed.2d 472 (1993); *State v. Tucker*, 626 So.2d 707 (La. 1993), *aff'd on reh'g*, 626 So.2d 720 (La. 1993); *People v. Bora*, 634 N.E.2d 168 (N.Y. 1994).

We first note that a trial court's findings of fact in a suppression hearing are binding on the appellate courts when supported by competent evidence. *State v. Brooks*, 337 N.C. 132, 140-41, 446 S.E.2d 579, 585 (1994). This Court must determine whether these findings of fact support the trial court's conclusions of law, and if so, the trial court's conclusions of law are binding on appeal. *Id.* at 141, 446 S.E.2d at 585.

Defendant argues that the evidence and the trial court's findings fail to support the trial court's conclusions of law that Agent Black had "reasonable articulable suspicion of illegal activity warranting their [*sic*] to ask certain questions of the defendant in order to investigate this particular activity," and "reasonably believed that he and his fellow officer were in a position of vulnerability and needed to determine whether or not the defendant did indeed possess any weapon." In light of our holding on the seizure issue, we need not decide the issue of whether Special Agent Black had reasonable suspicion.

The Constitution does not protect an individual from the mere approach of a police officer in a public place. *State v. Streeter*, 283 N.C. 203, 208, 195 S.E.2d 502, 506 (1973). Hence, communications between the police and citizens not involving coercion or detention do not fall within the purview of the Fourth Amendment. *State v. Perkerol*, 77 N.C. App. 292, 298, 335 S.E.2d 60, 64 (1985), *disc. review denied*, 315 N.C. 595, 341 S.E.2d 36 (1986). No reasonable suspicion is needed in order for a police officer to ask questions of an individual, ask for an individual's identification, or ask for consent to search his luggage as long as a reasonable person would understand he could refuse to cooperate. *Florida v. Bostick*, 501 U.S. 429, 434-35, 115 L.Ed.2d 389, 398-99 (1991). This questioning does not constitute a

STATE v. WEST

[119 N.C. App. 562 (1995)]

seizure, *see California v. Hodari D.*, 499 U.S. at 626, 113 L.Ed.2d at 697 (1991), and "the encounter is consensual and no reasonable suspicion is required." *Bostick*, 501 U.S. at 434, 115 L.Ed.2d at 398. A seizure does not occur until there is a physical application of force or submission to a show of authority. *Hodari D.*, 499 U.S. at 626, 113 L.Ed.2d at 697. In order to determine whether there has been a seizure, the test is whether under the totality of the circumstances a reasonable person would not feel free to decline the officer's request or otherwise terminate the encounter. *Bostick*, 501 U.S. at 439, 115 L.Ed.2d at 401-02; *Brooks*, 337 N.C. at 142, 446 S.E.2d at 586.

In the present case, Special Agent Black approached defendant in a public place, an airport parking deck. Black asked for defendant's airline ticket and identification. After he produced these items to Black's satisfaction, Black then asked for consent to search defendant's luggage which defendant gave. As defendant handed his luggage to Black, defendant trembled and jerked back briefly causing Black to have concern for his safety. Black asked for permission to frisk defendant, and defendant ran. While there is testimony that Black may have reached for defendant, there is no evidence indicating Black made a physical application of force or that defendant submitted to any show of force. At the point where Black asked permission to frisk and defendant ran, the encounter was still consensual and did not require reasonable suspicion. Looking at the totality of the circumstances in the present case, there is no evidence to show that a reasonable person in the position of defendant would have believed he was not free to leave or otherwise terminate the encounter at the point where Black asked permission to frisk. This questioning and request to frisk do not constitute a seizure, and Black did not need reasonable suspicion.

Accordingly, we hold Black's questioning and request to frisk defendant did not violate defendant's Fourth Amendment right against unreasonable searches and seizures. We decline to reject the United States Supreme Court's *Hodari D.* standard. The trial court's denial of defendant's motion to suppress is:

Affirmed.

Judges JOHNSON and McGEE concur.