STATE OF NORTH CAROLINA v. GILBERT CUEVAS A/K/A/ TONY CRUZ, Defendant

No. COA95-617

(Filed 20 February 1996)

1. **Evidence and Witnesses § 87 (NCI4th)— admission of defendant's passport—harmless error**

In a prosecution of defendant for trafficking in cocaine, the trial court erred in admitting into evidence defendant's passport with a stamp indicating that he had visited Colombia approximately two months earlier because this evidence was not probative of a fact in issue, but such error was not prejudicial where it was unlikely that a different result would have occurred at trial but for the introduction of the passport.

**Am Jur 2d, Evidence §§ 304, 319.**

STATE v. CUEVAS

[121 N.C. App. 553 (1996)]

**2. Criminal Law § 106 (NCI4th)— accomplice's statement not provided during discovery—admission not error**

The trial court did not err by admitting a statement made by an accomplice which had not been provided to defendant in discovery, since a defendant is not entitled to receive a copy of a statement by a co-perpetrator unless defendant is tried jointly with the co-perpetrator, and since the State provided defendant with the substance of the statements that he made to the co-perpetrator when it provided him with a copy of the co-perpetrator's subsequent statement. N.C.G.S. §§ 15A-903(b)(1), 903(a)(2).

**Am Jur 2d, Depositions and Discovery § 443.**

**Right of defendant in criminal case to inspection of statement of prosecution's witness for purposes of cross-examination or impeachment. 7 ALR3d 181.**

**3. Criminal Law § 829 (NCI4th)— request for instructions— accomplice testimony—credibility—perjury conviction— sentence reduction—instructions given in substance**

There was no merit to defendant's contention that the trial court erred by failing to give his requested instructions regarding the jury's consideration of his accomplice's perjury conviction in another state and her ability to avoid a mandatory minimum sentence only by testifying at his trial in determining her credibility, since the court did give the requested instructions in substance.

**Am Jur 2d, Trial §§ 818-820, 861, 866.**

**Necessity of, and prejudicial effect of omitting, cautionary instruction to jury as to accomplice's testimony against defendant in federal criminal trial. 17 ALR Fed. 249.**

**4. Criminal Law § 261 (NCI4th)— denial of continuance—no error**

The trial court did not err by denying defendant's request for continuance where defendant requested and received two continuances; his trial took place a little over a year after his arrest; defendant had ample time to confer with counsel, investigate, and present his defense; and defendant could not force a delay in proceedings by retaining out of state counsel and refusing to agree to a fee arrangement.

**Am Jur 2d, Continuance §§ 107-109.**

STATE v. CUEVAS

[121 N.C. App. 553 (1996)]

**5. Searches and Seizures § 7 (NCI4th)— defendant approached in public place—request to search—no seizure**

An officer's approach of defendant in a public place and request for permission to search his luggage and person did not constitute a seizure for constitutional purposes.

**Am Jur 2d, Searches and Seizures §§ 10 et seq.**

**What constitutes "seizure" within meaning of Federal Constitution's Fourth Amendment—Supreme Court cases. 100 L. Ed. 2d 981.**

Appeal by defendant from Judgment and Commitment entered 30 November 1990 by Judge Ernest B. Fullwood in New Hanover County Superior Court. Heard in the Court of Appeals 30 January 1996.

*Michael F. Easley, Attorney General, by Elizabeth Rouse Mosley, Assistant Attorney General, for the State.*

*Nora Henry Hargrove for defendant-appellant.*

WYNN, Judge.

On 31 October 1989, defendant Gilbert Cuevas, a/k/a Tony Cruz, offered Deborah White three hundred dollars to accompany him from New York on a bus trip. Ms. White agreed. They both boarded a bus leaving New York City at approximately 9:45 that evening.

Acting pursuant to a tip, Detectives James Smyre, Raymond Robinson and Michael Overton waited at the Wilmington bus station looking for three men arriving from New York. One man was described as Hispanic with a navy haircut; the other two as African-American, one light-skinned and one dark-skinned. The tipster described the three men as being about five feet six inches tall and of small to medium build; indicated that the men always came to Wilmington to sell drugs around the first of the month because welfare checks arrived on that day; and stated that the men ordinarily traveled by cab to a local inn.

At approximately noon on 1 November 1989, Ms. White, defendant and two other men fitting the tip description arrived at the station. Defendant and Ms. White obtained a cab, while the two other men obtained another cab. Detective Smyre having recognized that the three men fit the tip description, followed the cab carrying

STATE v. CUEVAS

[121 N.C. App. 553 (1996)]

defendant and Ms. White. Meanwhile, Detective Robinson assisted Detective Overton in stopping the cab carrying the other men.

The cab carrying defendant and Ms. White eventually stopped at a local restaurant. Detective Smyre drove up behind the cab, approached it, opened the rear passenger door of the cab, identified himself as a police officer, and asked defendant and Ms. White for permission to search their person and luggage. Upon receiving their consent, Detective Smyre searched defendant's luggage. Detective Robinson then arrived and informed Detective Smyre that no contraband had been found in the luggage of the two other men. Detective Smyre, after informing Detective Robinson that defendant and Ms. White had consented to a search of their person and luggage, requested assistance in searching Ms. White's green duffle bag. That search revealed a large amount of cocaine.

Following discovery of the cocaine, the detectives arrested defendant and Ms. White. During his search of defendant incident to arrest, Detective Smyre recovered one thousand nine hundred sixty dollars ($1,960.00) in cash, a pager, a small black notebook, and a stamped passport which indicated that defendant visited Colombia on 3 September 1989.

Defendant was tried on charges of trafficking in cocaine by possession in violation of N.C. Gen. Stat. § 90-95(h)(3) (1993), and trafficking in cocaine by transportation in violation of N.C.G.S. § 90-95(h)(3). Following verdicts of guilty, Superior Court Judge Ernest B. Fullwood sentenced defendant to thirty-five years imprisonment for each charge; to be served consecutively. Defendant gave notice of appeal in open court, but did not perfect his appeal. This Court denied his subsequent Petition for Certiorari; however, in an order dated 2 November 1994, our Supreme Court vacated this Court's denial and allowed defendant's Petition for Certiorari. Defendant's appeal is thus properly before this Court.

---

On appeal, defendant contends that the trial court erred by: (I) Allowing defendant's passport into evidence; (II) Admitting a statement by Ms. White which had not been provided to defendant in discovery; (III) Failing to give his requested instruction regarding Ms. White's perjury conviction and her ability to avoid a mandatory minimum sentence by testifying at his trial; (IV) Denying his request to continue; and (V) Denying his motion to suppress. We find no prejudicial error requiring a new trial.

## I

[1] Defendant first contends that the trial court erred by allowing his passport into evidence. He argues persuasively that the fact that the passport stamp indicated that he had visited Colombia on 3 September 1989, was not relevant, but instead was highly prejudicial because the jury might conclude, using images from television and other media outlets, that he must be a high level drug trafficker since he visited Colombia. We agree that it was error to admit the passport, but find that such error does not require a new trial.

In general, "all relevant evidence is admissible[,] and . . . evidence which is not relevant is not admissible." *State v. Moseley*, 338 N.C. 1, 31, 449 S.E.2d 412, 430 (1994), *cert. denied*, —— U.S. ——, 131 L. Ed.2d 738 (1995); N.C. Gen. Stat. § 8C-1, Rule 402 (1992). Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Id.*; N.C.G.S. § 8C-1, Rule 401. "Evidence is relevant if it has any logical tendency, however slight, to prove a fact in issue in the case." *State v. Whiteside*, 325 N.C. 389, 397, 383 S.E.2d 911, 915 (1989). Relevant evidence may be excluded pursuant to Rule 403 if:

> [I]ts probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . . Whether evidence should be excluded as unduly prejudicial or confusing rests within the sound discretion of the trial court . . . . The trial court's ruling in this regard may only be reversed for an abuse of discretion that was so arbitrary that it could not have been the result of a reasoned decision.

*Madden v. Carolina Door Controls*, 117 N.C. App. 56, 62, 449 S.E.2d 769, 773 (1994) (citations omitted). In general, the exclusion of evidence under the Rule 403 balancing test is within the sound discretion of the trial court, which ruling will not be disturbed absent abuse of discretion. *State v. Ward*, 338 N.C. 64, 96, 449 S.E.2d 709, 726 (1994), ·*cert. denied*, —— U.S. ——, 131 L. Ed.2d. 1013 (1995).

In the instant case, defendant contends that introduction of his passport indicating that he had recently visited Colombia unfairly prejudiced him by associating him with Colombia, a country widely known for its connection to the drug trade in the United States. He argues that the evidence was not relevant, or if it was relevant its prejudice was substantially outweighed by its probative value. Suffice

it to say that we agree with defendant's contention that the mere ownership of a passport showing travel to Colombia is not probative of a fact at issue in this case.

However, even though the trial court erred in admitting such evidence, that error alone does not mandate a new trial unless the admission substantially prejudiced the defendant such that a different result would likely have resulted had the error not occurred. *Madden*, 117 N.C. App. at 63, 449 S.E.2d at 773. We find that even absent introduction of the passport, it is not likely that a different result would have occurred at trial. Evidence against defendant included the fact that a large amount of cocaine worth one hundred and twenty-five thousand dollars ($125,000) was found on Ms. White, his traveling partner; Ms. White's testimony that it was defendant who gave her the bag containing the drugs; and that defendant wrote notes recording drug transactions. In addition, defendant was arrested with nearly two thousand dollars ($2,000) in cash and a pager. Such evidence makes it unlikely that a different result would have occurred at trial but for the introduction of the passport. This assignment of error is overruled.

## II

**[2]** Defendant next contends that the trial court erred by admitting a statement made by Ms. White on 1 November 1989 which had not been provided to him in discovery. We disagree.

Defendant cites N.C. Gen. Stat. § 15A-903(b)(1) (1988) in support of his argument. N.C.G.S. § 15A-903(b) states:

Statement of a Codefendant.—Upon motion of a defendant, the court must order the prosecutor:

(1) To permit the defendant to inspect and copy or photograph any written or recorded statement of a codefendant which the State intends to offer in evidence at their joint trial; and

(2) To divulge, in written or recorded form, the substance of any oral statement made by a codefendant which the State intends to offer at their joint trial.

N.C.G.S. § 15A-903(b)(1) applies only to written statements by a codefendant which the State intends to offer at a joint trial. The State "is not required to provide a defendant with statements made by witnesses or prospective witnesses of the State" unless specifically required to do so by N.C.G.S. § 15A-903. *State v. Abernathy*, 295 N.C.

147, 156, 244 S.E.2d 373, 379-80 (1978). A defendant is not entitled to receive a copy of a statement by a co-perpetrator unless the defendant is tried jointly with the co-perpetrator.

N.C. Gen. Stat. § 15A-903(a)(2) (1988) requires the prosecutor:

> to divulge, in [writing], the substance of any oral statement relevant to the subject matter of the case made by the defendant, regardless of to whom the statement was made, within the possession, custody or control of the State . . . .

Since a portion of Ms. White's 1 November 1989 oral statement contained statements made by defendant to her, that statement is covered by N.C.G.S. § 15A-903(a)(2). However, the State provided defendant with the substance of the statements that he made to Ms. White when it provided him with a copy of Ms. White's 21 November 1989 statement. This assignment of error is overruled.

III

**[3]** Defendant next contends that the trial court erred by failing to give his requested instructions regarding 1) Ms. White's perjury conviction and, 2) her ability to avoid a mandatory minimum sentence by testifying at his trial. We disagree.

The law in this state is clear that when a defendant requests a jury instruction that is a proper statement of the law and is supported by the evidence, the trial court must give the instruction, at least in substance. *State v. Jones*, 337 N.C. 198, 206, 446 S.E.2d 32, 36 (1994).

In the instant case, there was evidence that Ms. White was convicted of perjury. The defendant tendered the following instruction regarding Ms. White's perjury conviction:

> There is evidence which tends to show that Deborah White was convicted of perjury because of her false testimony in the trial of attempted murder charges in the courts of the State of New York. You may consider this evidence, together with all other facts and circumstances bearing upon her truthfulness, in deciding whether you will believe or disbelieve her testimony at this trial.

In addition, Ms. White testified that she was aware that the only way she could avoid a mandatory minimum sentence was by testifying against defendant. Consistent with this fact, defendant requested the following instruction:

STATE v. CUEVAS

[121 N.C. App. 553 (1996)]

There is evidence which tends to show that Deborah White was testifying with the understanding that her sentence could only be reduced from a mandatory minimum sentence of 35 years for each of the two charges to which she has plead [sic] guilty by her giving testimony in this case. If you find that he [sic] testified in whole or in part for this reason you should examine his [sic] testimony with great care and caution in deciding whether or not to believe it. If, after doing so, you believe his [sic] testimony in whole or in part, you should treat what you believe the same as any other believable evidence.

Both of defendant's tendered instructions were accurate statements of the law, and both were consistent with the evidence. Thus, the trial court was required to give these instructions in substance. The trial court did so.

Regarding Ms. White's perjury conviction, the trial court gave the pattern instruction regarding impeachment of a witness by proof of a crime:

[W]hen evidence has been received tending to show a witness has been convicted of criminal charges, you may consider this evidence for one purpose only. If considering the nature of the crimes you believe that this bears on truthfulness, then you may consider it together with all other facts and circumstances bearing upon the witness' truthfulness in deciding whether you will believe or disbelieve his testimony at this trial. Except as it may bear on this decision, this evidence may not be considered by you in your determination of any fact in this case.

This instruction gives the substance of defendant's requested instruction. The pattern instruction refers to the "nature of the crimes." This statement alerts the jury that some crimes are more probative of lack of truthfulness than others. This is the essence of defendant's request. Defendant has cited no authority, and we have found none, which requires that a trial court grant a more specific instruction depending on the nature of the crime.

Regarding the fact that Ms. White could only avoid a mandatory minimum sentence of thirty-five years for each offense by testifying against the defendant, the trial court gave a slight variation of the pattern instruction regarding a witness testifying with immunity:

There is evidence which tends to show that the witness, Deborah White, was an accomplice in the commission of the crimes

STATE v. CUEVAS

[121 N.C. App. 553 (1996)]

charged in this case. An accomplice is a person who joins with another in the commission of a crime. The accomplice may actually take part in acts necessary to accomplish the crime or he [sic] may knowingly help or encourage another in the crime either before or during its commission. An accomplice is considered by the law to have an interest in the outcome of the case. You should examine every part of the testimony of such a witness with the greatest care and caution. If after doing so you believe her testimony in whole or in part, you should treat what you believe the same as any other believable evidence.

This instruction gives the substance of defendant's requested instruction—that Ms. White's testimony should be scrutinized by the jury because she could be testifying to save herself from prison time. The instruction informed the members of the jury that they should examine Ms. White's testimony with the greatest care and caution because she was interested in the outcome of the case. That is the substance of defendant's proffered instruction. Moreover, even if there was error in failing to give defendant's specific instruction, we nonetheless find that such failure was not prejudicial. As stated previously, a fair review of the evidence in this trial indicates that even with the more specific instruction, defendant has not shown a reasonable possibility that had the instruction been given a different result would have been obtained at trial. *See State v. Alexander*, 337 N.C. 182, 192-93, 446 S.E.2d 83, 89 (1994). This assignment of error is overruled.

IV

[4] Defendant next contends that the trial court erred by denying his request for a continuance. Mr. Cuevas contends that the denial of his motion to continue violated his right to assistance of counsel and right of confronting witnesses in violation of Article I, § § 19 and 23 of the North Carolina Constitution, and the Sixth and Fourteenth Amendments to the United States Constitution. We disagree.

When a motion for a continuance is based on a constitutional right, the issue presented is an issue of law, and the trial decision is reviewable *de novo. State v. Burr*, 341 N.C. 263, 294, 461 S.E.2d 602, 618-19 (1995).

In *Burr*, our Supreme Court set out what a defendant must show in order to establish a constitutional violation due to the denial of a continuance. "To establish a constitutional violation, a defendant must show that he did not have ample time to confer with counsel

and to investigate, prepare and present his defense." *Id.* at 295, 461 S.E.2d at 619.

In the case *sub judice*, defendant was arrested on 1 November 1989. He requested and received two continuances. His trial did not occur until 26 November 1990. Defendant clearly had ample time to confer with counsel, investigate, and present his defense.

Defendant contends, however, that the denial of his requested continuance was prejudicial because of the circumstances involved. According to defendant, an attorney from New York, Larry Wallace, contacted Mr. William Sheffield, defendant's trial counsel, and informed him that he (Mr. Wallace) had been retained by defendant to represent him. Mr. Wallace sought to associate Mr. Sheffield as local counsel. Mr. Sheffield agreed to the arrangement. Mr. Wallace told Mr. Sheffield that he would procure a handwriting expert and character witnesses to testify favorably for the defense. Mr. Sheffield contended that, after about 10 October 1990, he was unable to contact Mr. Wallace or the other attorney in New York associated with Mr. Wallace. Mr. Wallace told Mr. Sheffield that there was "some problem" with the case. The problem was apparently with the fee arrangement.

The New York lawyers were never admitted to practice in North Carolina pursuant to N.C. Gen. Stat. § 84-4.1 (1995). The witnesses to be procured by the New York lawyers were never subpoenaed. Defendant may not force a delay in proceedings by retaining counsel and refusing to agree to a fee arrangement. Mr. Sheffield, an experienced lawyer, had ample time to arrange a defense. This assignment of error is overruled.

V

[5] Defendant next contends that the trial court erred by denying his motion to suppress the admission of his passport, beeper and notebook obtained during the search of his luggage. We disagree.

Defendant contends that his conduct did not give rise to a particularized suspicion which justified Detective Smyre's stop. The State contends that Detective Smyre's actions did not constitute a stop. Defendant concedes that *State v. West*, 119 N.C. App. 562, 459 S.E.2d 55, *disc. review denied*, 341 N.C. 656, 462 S.E.2d 524 (1995) is against him. In *West*, this Court stated:

The Constitution does not protect an individual from the mere approach of a police officer in a public place. *State v. Streeter,*

283 N.C. 203, 208, 195 S.E.2d 502, 506 (1973). Hence, communications between the police and citizens not involving coercion or detention do not fall within the purview of the Fourth Amendment. *State v. Perkerol*, 77 N.C. App. 292, 298, 335 S.E.2d 60, 64 (1985), *disc. review denied*, 315 N.C. 595, 341 S.E.2d 36 (1986). No reasonable suspicion is needed in order for a police officer to ask questions of an individual, ask for an individual's identification, or ask for consent to search his luggage as long as a reasonable person would understand he could refuse to cooperate. *Florida v. Bostick*, 501 U.S. 429, 434-35, 115 L.Ed. 2d 389, 398-99 (1991).

*Id.* at 565-66, 459 S.E.2d at 57. The impact of this statement is that police conduct does not constitute a seizure unless "a reasonable person would not feel free to decline the officer's request or otherwise terminate the encounter." *Id.* at 566, 459 S.E.2d at 58. In other words, a seizure does not occur until there is a physical application of force or submission to a show of authority. *Id.*

There is no allegation that any force was used by Detective Smyre. In order to show there was a seizure, then, defendant must show that a reasonable person would not have felt free to leave, or terminate the encounter with Detective Smyre. This he cannot do.

Detective Smyre neither ordered the cab carrying defendant to stop, nor turned on his siren, or ordered defendant to stay in place. Rather, he opened the rear door of the cab, which may have been partially open, and asked defendant and Ms. White for permission to search their luggage and person. They agreed.

Nothing in this encounter suggests that defendant was not free to leave. He was approached by Detective Smyre in a public place and asked for permission to search his luggage and person. In *West*, this Court held that an officer approaching a suspect in a public place and asking for permission to search his luggage did not constitute a seizure for constitutional purposes. We decline defendant's invitation to revisit that holding.

No prejudicial error.

Judges GREENE and McGEE concur.