STATE OF NORTH CAROLINA v. KAREN SEAGLE FOREMAN

No. COA98-676

(Filed 18 May 1999)

**1. Search and Seizure— avoidance of DWI checkpoint—automobile followed—hiding in driveway—reasonable and articulable suspicion of criminal activity**

There was a reasonable and articulable suspicion of criminal activity prior to defendant's seizure for driving while impaired where defendant made a quick left turn at the intersection immediately preceding a DWI checkpoint, an officer followed without engaging his siren or blue lights, the vehicle made a second abrupt left turn and parked in a residential driveway, the officer used his lights to see into the vehicle, defendant did not attempt to restart or exit the vehicle, all of its occupants remained "scrunched down" in the vehicle even though it was parked with its engine and lights off, the officer continuously watched the vehicle until backup arrived, and the occupants did not change positions. Although a legal left turn at an intersection immediately preceding a posted DWI checkpoint does not justify an investigatory stop without more, it is constitutionally permissible for officers to follow vehicles that legally avoid DWI check points and the defendant here was seized, at the earliest, when backup arrived. The objective facts the officer observed prior to the arrival of backup were sufficient to raise a reasonable and articulable suspicion of criminal activity.

**2. Motor Vehicles— driving while impaired—defendant as driver—evidence sufficient**

The trial court did not err in a DWI prosecution by denying defendant's motion to dismiss based upon insufficient evidence that she was the driver where an officer observed a small red vehicle making two turns, he found the vehicle in a residential driveway approximately forty-five seconds later, he pulled behind the vehicle and activated lights which enabled him to see inside the vehicle, he watched the individuals in the vehicle until backup arrived and they stayed in their respective positions, and defendant was sitting in the driver's seat with the keys in the ignition when officers subsequently approached the vehicle. These facts and the reasonable inferences drawn from them constitute substantial evidence that defendant was the driver of the vehicle.

Appeal by defendant from judgment dated 25 February 1998 by Judge James E. Ragan, III, in Craven County Superior Court. Heard in the Court of Appeals 16 March 1999.

*Attorney General Michael F. Easley, by Assistant Attorney General Jonathan P. Babb, for the State.*

*William F. Ward, III, P.A., by William F. Ward, III, for defendant-appellant.*

GREENE, Judge.

Karen Foreman (Defendant) appeals her conviction for driving while impaired (DWI).

Defendant received a DWI citation at 2:45 a.m. on 16 November 1996. Prior to trial, Defendant made a motion to suppress the evidence obtained during the investigatory stop of her vehicle on the grounds that the stop was unconstitutional. At a *voir dire* hearing on Defendant's motion, Officer Doug Ipock (Officer Ipock) testified that a DWI traffic enforcement checkpoint had been established on Neuse Boulevard on 16 November 1996. At the intersection of Neuse Boulevard and Midgette Road, which immediately preceded the DWI checkpoint, a large sign was posted reading "DWI Checkpoint Ahead." At approximately 2:00 a.m., Officer Ipock observed a "small red vehicle" traveling towards the DWI checkpoint on Neuse Boulevard. The vehicle "made an immediate left onto Midgette Avenue . . . right there at the [DWI Checkpoint Ahead] sign." Officer Ipock described the turn as a "quick left turn," but noted that he "did not observe anything illegal about the turn." At this point, he could not see who was driving the vehicle. Officer Ipock began to follow the small red vehicle, and was approximately thirty to forty-five yards behind it. Officer Ipock continuously observed the vehicle until it made a second left turn, "also quick and abrupt," onto Taylor Street, the first street intersecting Midgette Road. Officer Ipock briefly lost sight of the small red vehicle once it turned onto Taylor Street. Officer Ipock immediately followed onto Taylor Street, and drove about halfway down the block without crossing any intersecting roads and without seeing a moving vehicle.

I said to myself at that point in time there's no way the vehicle could have gotten all the way to the other end of Taylor Street before I would have been able to reacquire a visual sighting of it. So, therefore, I turned around on [Taylor Street, heading back

towards Midgette Road,] and began checking each residence as I came down the road.

Approximately forty-five seconds after losing sight of the small red vehicle, Officer Ipock "spotted a red small compact car" parked in a residential driveway on Taylor Street. Officer Ipock "pulled in behind it and I then shined my bright lights on the vehicle and my takedown lights, at which time I then saw people that were scrunched down in the vehicle."[1] The vehicle's engine was not running, its lights were off, and the doors of the vehicle were closed. Officer Ipock radioed for backup, and remained in his vehicle continuously watching the small red vehicle until backup arrived less than two minutes later. The occupants remained "scrunched" or "ducked" down and did not change positions in the vehicle. After backup arrived, Officer Ipock approached the vehicle. Defendant was sitting in the driver's seat of the vehicle, and the keys were still in the ignition. After hearing Officer Ipock's testimony and the arguments of counsel, the trial court denied Defendant's motion to suppress the evidence.

At trial, Officer Ipock offered substantially the same testimony as had been elicited during *voir dire*. He further testified that several open containers of alcohol were found in the vehicle once backup arrived, and that the vehicle emitted a "[s]trong odor of alcohol." Officer Ipock testified that Defendant had a "strong to moderate" odor of alcohol about her person once she was removed from the vehicle.

Officer Kenneth Hunter (Officer Hunter) testified that he arrived at the driveway on Taylor Street in response to Officer Ipock's call for backup. Officer Ipock "identified [Defendant] as the individual who had been behind the wheel of the car," and asked Officer Hunter to check Defendant's sobriety. Officer Hunter testified that Defendant had a "[v]ery strong odor of alcohol about her breath. She was unsteady on her feet." Officer Hunter further testified:

> Upon observing her and learning from Officer Ipock that she was behind the wheel of the car, I did not perform the standardized field sobriety test there at the scene, for two reasons. One, the driveway was not level. It was sloped. And the weather was some-what cold, if I remember. It was a little chilly on the outside at that time of night. But based on my observations of her I arrested her for driving while impaired.

---

1. Officer Ipock explained that "takedown" lights are "spotlights that we have that we can illuminate a particular area."

STATE v. FOREMAN

[133 N.C. App. 292 (1999)]

When he arrived with Defendant at the police station, Officer Hunter asked Defendant to perform various standardized sobriety tests. He testified that Defendant could not maintain her balance and noticeably wobbled and swayed while trying to perform these tests. Defendant refused to undergo chemical analysis of her breath on an Intoxilyzer.

At the close of the State's evidence, Defendant made a motion to dismiss on the ground that the evidence was insufficient to show that Defendant was the driver of the small red vehicle. The trial court denied the motion. Defendant did not present any evidence.

---

The issues are whether: (I) Officer Ipock had a reasonable and articulable suspicion that Defendant was engaged in criminal activity prior to her seizure; and (II) there is substantial evidence that Defendant was the driver of the small red vehicle.

I

[1] For purposes of the Fourth Amendment, an "investigatory stop" is a seizure which must be supported by "a reasonable and articulable suspicion that the person seized is engaged in criminal activity." *State v. Hendrickson*, 124 N.C. App. 150, 155, 476 S.E.2d 389, 392 (1996); *see also Reid v. Georgia*, 448 U.S. 438, 440, 65 L. Ed. 2d 890, 893-94 (1980) (per curiam) (noting that "probable cause" is not constitutionally required for brief detentions short of arrest that are supported by a reasonable and articulable suspicion that the seized individual is engaged in criminal activity). Defendant first contends a legal left turn at the intersection immediately preceding a posted DWI checkpoint, without more, does not provide a reasonable and articulable suspicion that the driver is engaged in criminal activity. We agree.[2]

An individual may legally avoid contact with the police. *State v. Fleming*, 106 N.C. App. 165, 170-71, 415 S.E.2d 782, 785 (1992) (individuals walked "in a direction which led away from the group of officers"). This avoidance, standing alone, is not sufficient to raise a reasonable and articulable suspicion of criminal activity. *Id.*

[An individual] need not answer any question put to him [by an officer]; indeed he may decline to listen to the questions at all and

---

2. Several states have addressed whether avoidance of a DWI checkpoint is sufficient to justify an investigatory stop. *See* Robert L. Farb, *Does Avoiding License or DWI Checkpoint Support Reasonable Suspicion to Stop a Vehicle?*, N.C. Inst. of Gov't, Feb. 1999 (summarizing state cases).

may go on his way. He may not be detained even momentarily without reasonable, objective grounds for doing so; and his refusal to listen or answer does not, without more, furnish those grounds.

*State v. Farmer*, 333 N.C. 172, 186, 424 S.E.2d 120, 128 (1993) (quoting *Florida v. Royer*, 460 U.S. 491, 498, 75 L. Ed. 2d 229, 236 (1983) (citations omitted)). Accordingly, a legal left turn at the intersection immediately preceding a posted DWI checkpoint, without more, does not justify an investigatory stop. We emphasize, however, that it is constitutionally permissible, and undoubtedly prudent, for officers to follow vehicles that legally avoid DWI checkpoints, in order to ascertain whether other factors exist which raise a reasonable and articulable suspicion that an occupant of the vehicle is engaged in criminal activity. *See California v. Hodari D.*, 499 U.S. 621, 628, 113 L. Ed. 2d 690, 698 (1991) (noting that a "police cruiser's slow following of the defendant did not convey the message that he was not free to disregard the police and go about his business" and thus did not constitute seizure). Thus, if Defendant was seized solely based on a legal left turn preceding the DWI checkpoint, that seizure was unconstitutional.

Seizure occurs "when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Terry v. Ohio*, 392 U.S. 1, 19 n.16, 20 L. Ed. 2d 889, 905 n.16 (1968). Police conduct does not constitute a seizure unless, in view of all of the circumstances, " 'a reasonable person would not feel free to decline the officer's request or otherwise terminate the encounter.' In other words, a seizure does not occur until there is a physical application of force or submission to a show of authority." *State v. Cuevas*, 121 N.C. App. 553, 563, 468 S.E.2d 425, 431 (quoting *State v. West*, 119 N.C. App. 562, 566, 459 S.E.2d 55, 58, *appeal dismissed and disc. review denied*, 341 N.C. 656, 462 S.E.2d 524 (1995)), *disc. review denied*, 343 N.C. 309, 471 S.E.2d 77 (1996). For example, no seizure occurs when an officer approaches an individual in a public place and asks that individual questions. *State v. Brooks*, 337 N.C. 132, 142, 446 S.E.2d 579, 586 (1994) (holding no seizure occurred where officer approached and questioned individual sitting in parked car); *Cuevas*, 121 N.C. App. at 563, 468 S.E.2d at 431 (holding no seizure occurred where officer followed taxicab and opened its door after it stopped because he did not order it to stop, did not engage his siren, and did not order defendant to stay in the taxicab).

Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.

*Farmer*, 333 N.C. at 187, 424 S.E.2d at 129 (quoting *United States v. Mendenhall*, 446 U.S. 544, 554, 64 L. Ed. 2d 497, 509 (1980)). A seizure does not occur, however, "when an officer shouts, 'Stop, in the name of the law,' and the person continues to flee. To constitute a seizure, there must be . . . a submission to the officer's show of authority ([*i.e.*,] the person stops as a result of the officer's command)." Robert L. Farb, *Arrest, Search, and Investigation in North Carolina* at 286 (2d ed. 1992); *see Hodari D.*, 499 U.S. at 629, 113 L. Ed. 2d at 699 (holding officer's pursuit of defendant did not constitute seizure until officer tackled defendant).

In this case, when Officer Ipock began following Defendant's vehicle, he did not engage his sirens or his flashing blue lights, and he did not otherwise indicate that he was stopping the vehicle. After locating Defendant's vehicle parked in a driveway with its lights and engine off, Officer Ipock pulled behind it and turned on his "takedown" lights to enable him to see into the vehicle. Defendant did not attempt to restart or exit the vehicle. At that point, Defendant was not restrained by Officer Ipock and had not submitted to any show of authority, and a reasonable person would have felt free to terminate the encounter. Accordingly, Defendant was seized, at the very earliest, when backup arrived. *See Farmer*, 333 N.C. at 187, 424 S.E.2d at 129 (noting "the threatening presence of several officers" may constitute seizure).

In determining whether Officer Ipock had a reasonable and articulable suspicion that Defendant was engaged in criminal activity, therefore, we consider the objective facts Officer Ipock observed prior to the arrival of backup, the earliest point at which Defendant could have been seized. Prior to this point, Officer Ipock observed Defendant's vehicle make a "quick left turn" at the intersection immediately preceding a DWI checkpoint. Officer Ipock observed the vehicle make a second "abrupt" left turn, and then observed the vehicle parked in a residential driveway. The occupants remained in the vehicle even though the vehicle was parked with its engine and lights off. Finally, the occupants of the vehicle were "scrunched down." All of

these facts were available to Officer Ipock before Defendant was seized, and these facts are sufficient to raise a reasonable and articulable suspicion of criminal activity.

II

[2] Defendant next contends the trial court erred in denying her motion to dismiss because the evidence was insufficient to establish that she was the driver of the small red vehicle.

A motion to dismiss should be denied if there is substantial evidence of each essential element of the charged offense and substantial evidence that the defendant is the individual who committed it. *State v. Stone*, 323 N.C. 447, 451, 373 S.E.2d 430, 433 (1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *State v. Bullard*, 312 N.C. 129, 160, 322 S.E.2d 370, 387 (1984)). The court must consider the evidence in the light most favorable to the State. *Id.* Furthermore, the State is entitled to every reasonable inference to be drawn from the evidence. *Id.* at 452, 373 S.E.2d at 433.

> Circumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence. The evidence need only give rise to a reasonable inference of guilt in order for it to be properly submitted to the jury for a determination of defendant's guilt beyond a reasonable doubt.

*Id.* (citations omitted).

In this case, Officer Ipock observed a small red vehicle driving along Neuse Boulevard turn onto Midgette Road, and from there, onto Taylor Street. Officer Ipock found the small red vehicle in a residential driveway on Taylor Street approximately forty-five seconds later. When Officer Ipock pulled in behind the vehicle, he activated his vehicle's high beams and "takedown" lights, which enabled him to see inside the vehicle. Officer Ipock testified that he watched the individuals in the vehicle until backup arrived, and they stayed in their respective positions. When the officers subsequently approached the vehicle, Defendant was sitting in the driver's seat and the keys to the vehicle were in the ignition. These facts, along with the reasonable inferences drawn from these facts, constitute substantial evidence that Defendant was the driver of the small red vehicle when it was traveling on Neuse Boulevard, Midgette Road, and Taylor Street.

Accordingly, the trial court did not err in refusing to dismiss the charges against Defendant.

We have thoroughly reviewed Defendant's remaining contentions and find them to be unpersuasive.

No error.

Judges LEWIS and HORTON concur.