IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA18-734

 Filed: 3 September 2019

Rowan County, No. 17CRS51386

STATE OF NORTH CAROLINA,

 v.

CORY ANTWON MAHATHA, Defendant.

 Appeal by Defendant from judgment entered 24 January 2018 by Judge Lori I.

Hamilton in Rowan County Superior Court. Heard in the Court of Appeals 27

February 2019.

 Attorney General Joshua H. Stein, by Assistant Attorney General Forrest P.
 Fallanca, for the State-Appellee.

 Morgan & Carter PLLC, by Michelle F. Lynch, for the Defendant-Appellant.

 COLLINS, Judge.

 Defendant Cory Antwon Mahatha appeals from judgment entered upon a

jury’s verdicts finding him guilty of felony speeding to elude arrest and attaining

habitual felon status. After careful review, we conclude that the trial court failed to

provide adequate information to ensure that Defendant knowingly, intelligently, and

voluntarily waived his right to be represented by counsel. We therefore vacate

Defendant’s convictions and judgment and grant a new trial.

 I. Factual Background and Procedural History
 STATE V. MAHATHA

 Opinion of the Court

 On 28 March 2017, Detective Patrick Schmeltzer of the Rowan County Sheriff’s

Office was assigned to the crime reduction unit in the Airport Road area. Schmeltzer,

accompanied by Detective Cody Trexler and Deputy Naturile, patrolled the area in

an unmarked black Chevrolet Tahoe. Schmeltzer received a “be on the lookout”

(“BOLO”) from his supervisor, Sergeant Weston, who radioed that an assault had

occurred and that the suspect vehicle, a white Dodge Challenger, was heading his

way. Schmeltzer pulled his vehicle onto the shoulder, waited, and spotted a white

Dodge Challenger drive past him. Schmeltzer pulled onto the highway and followed

the vehicle for some distance but did not observe Defendant speed, commit any traffic

violations, or engage in suspicious behavior. Schmeltzer activated the Tahoe’s blue

lights and siren in order to initiate a traffic stop of the vehicle.

 Defendant was driving the white Dodge Challenger but did not pull over when

Schmeltzer activated the Tahoe’s blue lights and siren. Instead, Defendant

maintained a speed of approximately 45 miles per hour and continued driving until

he reached South Main Street. Once Defendant reached South Main Street, he

turned right and accelerated to speeds of 90-100 miles per hour. The officers pursued

Defendant onto South Main Street and witnessed Defendant: cross into turn lanes

and onto the shoulder of the road in order to pass other vehicles; “almost wreck”

before swerving back into traffic; fish-tail across lanes; pass over the double-yellow

lines; and turn into oncoming traffic.

 -2-
 STATE V. MAHATHA

 Opinion of the Court

 Defendant next drove through an intersection, failed to stop at a stop sign, and

pulled his car into a driveway; he then took off on foot and ran into a cow pasture.

Schmeltzer and Naturile pursued Defendant on foot, discovered him hiding in a ditch,

and took Defendant into custody. Upon searching Defendant, the officers found

$3000 on his person and later found a small amount of marijuana inside Defendant’s

vehicle.

 On 15 May 2017, a grand jury indicted Defendant for felony speeding to elude

arrest in violation of N.C. Gen. Stat. § 20-141.5(B) (2017). On 12 June 2017, a grand

jury indicted Defendant for having attained habitual felon status in violation of N.C.

Gen. Stat. § 14-7.1 (2017).

 On 11 September 2017, Defendant was arraigned in Rowan County Superior

Court. The trial court told Defendant of the crimes with which he was charged:

“obtaining the status of a habitual felon; possession of a firearm by a felon; attempted

robbery with a firearm; fleeing to allude arrest; driving while license revoked, not an

impaired revocation; and assaulting a female.” The trial court asked Defendant

whether he wished to have a lawyer represent him, to which Defendant replied that

he was going to represent himself. The trial court also asked Defendant if he

understood how much time he was facing and told him that he was “looking at . . .

231 months.” At the end of his arraignment, Defendant entered a plea of not guilty.

 -3-
 STATE V. MAHATHA

 Opinion of the Court

 On 23 January 2018, prior to the start of Defendant’s jury trial, the State

dismissed the charges of driving while license revoked, not an impaired revocation;

assault on a female; possession of a firearm by a felon; and attempted robbery with a

dangerous weapon. The State proceeded to trial on the charges of speeding to elude

arrest and attaining habitual felon status.

 On 24 January 2018, the jury returned verdicts finding Defendant guilty of

both charges. The trial court entered judgment upon the jury’s verdicts, sentencing

Defendant to a term of 97 months’ to 129 months’ imprisonment. From entry of

judgment, Defendant gave proper notice of appeal.

 II. Discussion

 Defendant argues that the trial court erred (1) in failing to dismiss the charge

of speeding to elude arrest where there was no evidence that the officer was lawfully

performing his duties at the time of the traffic stop and (2) by allowing Defendant to

represent himself when his waiver of counsel was not valid and by later denying his

request for appointed counsel.

A. Speeding to Elude Arrest

 Defendant first argues that the trial court erred in failing to dismiss the charge

of speeding to elude arrest when there was no evidence that Schmeltzer was lawfully

performing his duties when he initiated an investigatory traffic stop of Defendant.

Defendant’s argument is misplaced.

 -4-
 STATE V. MAHATHA

 Opinion of the Court

1. Standard of Review

 In considering whether to grant a motion to dismiss for insufficiency of the

evidence, the trial court must determine (1) whether the State offered substantial

evidence of each essential element of the offense charged, whether direct,

circumstantial, or both, and (2) whether the defendant is the perpetrator of the

offense. State v. Fritsch, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (2000). Substantial

evidence is relevant evidence “that a reasonable mind might accept as adequate to

support a conclusion.” State v. Lambert, 341 N.C. 36, 42, 460 S.E.2d 123, 127 (1995)

(citation omitted). “[T]he evidence presented must be considered in the light most

favorable to the State, and the State is entitled to every reasonable inference to be

drawn therefrom.” Id. A trial court’s denial of a motion to dismiss for insufficient

evidence is reviewed de novo. State v. Bagley, 183 N.C. App. 514, 523, 644 S.E.2d

615, 621 (2007).

2. Sufficiency of the Evidence Analysis

 The crime of speeding to elude arrest is defined as operating “a motor vehicle

on a street, highway, or public vehicular area while fleeing or attempting to elude a

law enforcement officer who is in the lawful performance of his duties.” N.C. Gen.

Stat. § 20-141.5(a) (2017). While a violation of N.C. Gen. Stat. § 20-141.5 is ordinarily

a misdemeanor, the offense is a felony if two or more aggravating factors are present,

including speeding in excess of 15 miles per hour over the legal speed limit and

 -5-
 STATE V. MAHATHA

 Opinion of the Court

reckless driving as proscribed by N.C. Gen. Stat. § 20-140. See N.C. Gen. Stat. § 20-

141.5(b) (2017). Thus, for purposes of N.C. Gen. Stat. § 20-141.5, an individual’s guilt

hinges upon the extent to which he attempts to flee from an officer who is lawfully

performing his official duties. State v. Sinclair, 191 N.C. App. 485, 489-90, 663 S.E.2d

886, 870 (2008).

 “The Fourth Amendment protects individuals against unreasonable searches

and seizures. The North Carolina Constitution provides similar protection.” State v.

Hernandez, 208 N.C. App. 591, 597, 704 S.E.2d 55, 59 (2010) (quotation marks and

citations omitted). “[B]rief investigatory detentions such as those involved in the

stopping of a vehicle” are subject to Fourth Amendment protections. State v. Watkins,

337 N.C. 437, 441, 446 S.E.2d 67, 70 (1994) (citation omitted). “A police officer may

effect a brief investigatory seizure of an individual where the officer has reasonable,

articulable suspicion that a crime may be underway.” State v. Barnard, 184 N.C.

App. 25, 29, 645 S.E.2d 780, 783 (2007) (citation omitted).

 A seizure occurs “when the officer, by means of physical force or show of

authority, has in some way restrained the liberty of a citizen.” Terry v. Ohio, 392

U.S. 1, 19 n.16 (1968). There must be “a physical application of force or submission

to a show of authority” for a seizure to be found. State v. Cuevas, 121 N.C. App. 553,

563, 468 S.E.2d 425, 431 (1996) (citation omitted). However, a simple show of

authority by law enforcement does not rise to the level of a seizure unless the suspect

 -6-
 STATE V. MAHATHA

 Opinion of the Court

submits to that show of authority. California v. Hodari D., 499 U.S. 621, 626 (1991);

see State v. Mangum, 250 N.C. App. 714, 726, 795 S.E.2d 106, 116-17 (2016)

(determining that the activation of an officer’s blue lights does not constitute an

official stop and therefore a seizure, but is merely an assertion of authority and order

to stop, with no concomitant seizure of the person).

 Accordingly, this Court considers the totality of the circumstances, both before

and after an officer signals his intention to stop a defendant, in determining whether

there was reasonable suspicion of criminal activity to justify a traffic stop. Id. The

reasonable suspicion “must be based on specific and articulable facts, as well as the

rational inferences from those facts, as viewed through the eyes of a reasonable,

cautious officer, guided by his experience and training[,]” Watkins, 337 N.C. at 441,

446 S.E.2d at 70, and we must consider “the whole picture in determining whether a

reasonable suspicion exists to justify an officer’s investigatory traffic stop.” State v.

Jones, 813 S.E.2d 668, 670 (N.C. Ct. App. 2018) (quotation marks and citation

omitted).

 Defendant argues that he was seized at the moment Schmeltzer activated his

blue lights, but Defendant’s argument is without merit. Schmeltzer’s activation of

his blue lights was merely a show of authority and an order to stop. Mangum, 250

N.C. App. at 726, 795 S.E.2d at 116-17. As Defendant did not heed this order and

pull over, he did not submit to Schmeltzer’s show of authority; therefore, Defendant

 -7-
 STATE V. MAHATHA

 Opinion of the Court

was not seized at the time Schmeltzer activated his blue lights. Id. Instead,

Defendant was seized once the officers placed him in handcuffs; this “physical

application of force” effectuated the seizure of Defendant and was the point at which

reasonable suspicion must have existed. Cuevas, 121 N.C. App. at 563, 468 S.E.2d at

431.

 Defendant further argues that the BOLO, based on an anonymous tip, was not

on its own sufficient to create reasonable suspicion for the stop. As to the tip, we

agree that an anonymous tip, absent “sufficient indicia of reliability[,]” is not on its

own sufficient to create reasonable suspicion for the stop. State v. Hughes, 353 N.C.

200, 207, 539 S.E.2d 625, 630 (2000). Nevertheless, “a tip that is somewhat lacking

in reliability may still provide a basis for reasonable suspicion if it is buttressed by

sufficient police corroboration.” Id. Here, we need not determine whether the BOLO

provided sufficient reasonable suspicion on its own, as the reasonable suspicion

inquiry includes all circumstances prior to when Defendant was seized. Mangum,

250 N.C. App. at 726, 795 S.E.2d at 116-17.

 Schmeltzer’s subsequent observations of Defendant’s traffic crimes enabled

Schmeltzer to “buttress[] the tip through sufficient police corroboration,” and to form

the basis for suspicion of criminal activity. Mangum, 250 N.C. App at 729, 795 S.E.2d

at 118 (internal quotation marks, brackets and citation omitted); see United States v.

Arvizu, 534 U.S. 266, 277 (2002) (determining that an officer’s subsequent

 -8-
 STATE V. MAHATHA

 Opinion of the Court

observations of criminal activity may combine to “form a particularized and objective

basis” for reasonable suspicion). Schmeltzer first observed Defendant accelerate to

speeds of 90-100 miles per hour, despite a maximum speed limit of 45 miles per hour.

Schmeltzer testified that Defendant drove “quite recklessly” and almost hit other

cars, pulled onto the shoulder of the road in order to pass other cars, swerved and

fishtailed across multiple lanes, and crossed over a double-yellow line to turn into

oncoming traffic. Trexler and Naturile also testified that Defendant fled from them,

drove at speeds of 90-100 miles per hour, pulled onto the shoulder in order to pass

other cars, swerved and fishtailed across lanes, and turned into oncoming traffic.

 Defendant then ran a stop sign, drove through an intersection, parked in a

driveway, and took off running into a cow pasture. Schmeltzer and Naturile pursued

Defendant into the cow pasture, and eventually found him hiding in a ditch.

 Considering the totality of the circumstances, we conclude that Schmeltzer had

reasonable suspicion that criminal activity was underway, Barnard, 184 N.C. App.

at 29, 645 S.E.2d at 783, and thus Schmeltzer was lawfully performing his duties at

the time of the stop. Accordingly, the trial court did not err by denying Defendant’s

motion to dismiss for insufficient evidence.

B. Waiver of Counsel

 -9-
 STATE V. MAHATHA

 Opinion of the Court

 Defendant next argues that the trial court committed reversible error by

failing to comply with the statutory mandate of N.C. Gen. Stat. § 15A-1242 (2017)

before allowing him to represent himself. We agree.

1. Standard of Review

 “We review the question of whether a trial court complied with N.C. Gen. Stat.

§ 15A-1242 de novo.” State v. Frederick, 222 N.C. App. 576, 581, 730 S.E.2d 275, 279

(2012) (citation omitted).

2. Analysis

 “Before allowing a defendant to waive in-court representation by counsel, . . .

the trial court must [e]nsure that constitutional and statutory standards are

satisfied.” State v. Thomas, 331 N.C. 671, 673, 417 S.E.2d 473, 475 (1992). Thus, a

trial court “must determine whether the defendant knowingly, intelligently, and

voluntarily waives the right to in-court representation by counsel.” Id. at 674, 417

S.E.2d at 476 (citations omitted). A thorough inquiry into the three substantive

elements of N.C. Gen. Stat. § 15A-1242 satisfies constitutional requirements. State

v. Fulp, 355 N.C. App. 171, 175, 558 S.E.2d 156, 159 (2002).

 N.C. Gen. Stat. § 15A-1242 provides:

 A defendant may be permitted at his election to proceed in
 the trial of his case without the assistance of counsel only
 after the trial judge makes thorough inquiry and is
 satisfied that the defendant:

 - 10 -
 STATE V. MAHATHA

 Opinion of the Court

 (1) Has been clearly advised of his right to the
 assistance of counsel, including his right to the assignment
 of counsel when he is so entitled;
 (2) Understands and appreciates the consequences of
 this decision; and
 (3) Comprehends the nature of the charges and
 proceedings and the range of permissible punishments.

N.C. Gen. Stat. § 15A-1242. “[T]he critical issue is whether the statutorily required

information has been communicated in such a manner that defendant’s decision to

represent himself is knowing and voluntary.” State v. Carter, 338 N.C. 569, 583, 451

S.E.2d 157, 164 (1994). If the trial court fails “to make the inquiry mandated by [N.C.

Gen. Stat.] § 15A-1242 before permitting the defendant to proceed to trial without

counsel, the defendant is entitled to a new trial.” State v. Dunlap, 318 N.C. 384, 389,

348 S.E.2d 801, 805 (1986) (citations omitted).

 Defendant’s waiver of counsel took place at the arraignment hearing on 11

September 2017. At that time, Defendant was charged with the following: driving

while license revoked, not an impaired revocation, a class III misdemeanor carrying a

maximum sentence of 20 days in jail; assault on a female, a class A1 misdemeanor

carrying a maximum sentence of 150 days in jail; possession of a firearm by a felon, a

class G felony; attempted robbery with a dangerous weapon, a class D felony; speeding

to elude arrest, a class H felony; and having attained habitual felon status. The habitual

felon charge would have elevated the charges of possession of a firearm by a felon and

attempted robbery with a dangerous weapon to class C felonies, each carrying a

maximum prison term of 231 months, and the charge of speeding to elude arrest to a

 - 11 -
 STATE V. MAHATHA

 Opinion of the Court

class D felony, carrying a maximum prison term of 204 months. If convicted of all

charges, Defendant could have faced a maximum of 666 months (55.5 years) in prison

plus 170 days in jail.

 At the hearing, the following discussion took place between the trial court, the

prosecutor, and Defendant:

 THE COURT: Okay. And, Mr. Mahatha, you are here today
 charged with obtaining the status of a habitual felon in
 which -- which class is he going to be? A “C” or a “D”?
 MR. GOULD: Your Honor, it will be --
 THE COURT: Or an E?
 MR. GOULD: -- a Class D.
 THE COURT: Okay. -- which will be a Class D felony,
 which has a possible maximum sentence of 204 months.
 You’re also charged with possession of a firearm by a felon.
 A Class G felony. A possible maximum sentence of 47
 months. Attempted robbery with a firearm. Is that a G?
 MR. GOULD: Your Honor, it was actually -- the possession
 of a firearm by a convicted felon is going to be a C. The
 attempted robbery is going to be a C.
 THE COURT: Okay. Because of the habitual?
 MR. GOULD: Yeah.
 THE COURT: Yeah. Yeah. Fleeing to allude (sic) arrest
 and driving while license revoked, not an impaired
 revocation, which is a Class III misdemeanor. A possible
 maximum sentence of 20 days in jail. On assaulting a
 female, a maximum sentence of 150 days. Do you wish to
 have a lawyer represent you on these matters?
 THE DEFENDANT: I'm going to represent myself.
 THE COURT: Do you understand how much time you’re
 looking at? 231 months.
 THE DEFENDANT: Yeah, I understand.

 - 12 -
 STATE V. MAHATHA

 Opinion of the Court

 The trial court failed to inform Defendant of “the nature of the charges and

proceedings and the range of permissible punishments” he faced. N.C. Gen. Stat. §

15A-1242. First, the trial court erroneously indicated that “obtaining the status of a

habitual felon . . . will be a Class D felony, which has a possible maximum sentence

of 204 months.” “Being a habitual felon is not a crime but is a status the attaining of

which subjects a person thereafter convicted of a crime to an increased punishment

for that crime. The status itself, standing alone, will not support a criminal sentence.”

State v. Allen, 292 N.C. 431, 435, 233 S.E.2d 585, 588 (1977).

 The trial court also erroneously indicated to Defendant that he could face “[a]

possible maximum sentence of 47 months” for the possession of a firearm by a felon

charge when, if determined to be a habitual felon, Defendant could have faced a

possible maximum sentence of 231 months on that charge. The trial court did not

inform Defendant that for the attempted robbery with a dangerous weapon charge, if

determined to be a habitual felon, Defendant could have faced a maximum prison

term of 231 months. Furthermore, the trial court erroneously referred to the speeding

to elude arrest charge as “fleeing to [e]lude arrest” and failed to inform Defendant

that the speeding to elude arrest charge was a felony which carried a maximum

habitualized prison term of 204 months. Finally, the trial court queried Defendant if

he understood that he could face “231 months” where Defendant could actually have

faced a maximum of 666 months (55.5 years) in prison plus 170 days in jail.

 - 13 -
 STATE V. MAHATHA

 Opinion of the Court

 As the trial court failed to inform Defendant of “the nature of the charges and

proceedings and the range of permissible punishments” he faced, the trial court’s

inquiry failed to satisfy the requirements of N.C. Gen. Stat. § 15A-1242. Accordingly,

Defendant’s waiver of counsel was not knowing, intelligent, or voluntary, Thomas,

331 N.C. at 674, 417 S.E.2d at 476, and failed to satisfy constitutional requirements.

Carter, 338 N.C. at 583, 451 S.E.2d at 164. Defendant is therefore entitled to a new

trial.

 III. Conclusion

 Defendant’s argument that Schmeltzer was not lawfully performing his duties

when he stopped Defendant fails, as Schmeltzer had reasonable suspicion to believe

that criminal activity had occurred based on his observations of Defendant

committing traffic crimes.

 However, as the trial court failed to inform Defendant of “the nature of the

charges and proceedings and the range of permissible punishments,” we conclude

that the trial court failed to comply with the requisite Constitutional and statutory

mandates before allowing Defendant to represent himself. We thus vacate

Defendant’s convictions and the trial court’s judgment, and remand for a new trial.

It is so ordered.

 NEW TRIAL.

 Judges DILLON and INMAN concur.

 - 14 -