STATE OF NORTH CAROLINA v. TIMOTHY STONE

No. COA05-1418

(Filed 5 September 2006)

1. **Search and Seizure— investigatory search—reasonable suspicion**

   The trial court did not err in a possession with intent to sell or deliver cocaine case by concluding that an officer seized the occupants of the pertinent vehicle when he pulled behind the vehicle and that the officer did not violate defendant's constitutional rights by asking defendant to step out of the vehicle, because: (1) whether the officer seized the occupants of the vehicle when he pulled behind them or when he approached the vehicle, he had reasonable suspicion of two traffic violations and lawfully conducted a brief detention of the occupants of the vehicle; (2) the officer was justified in asking defendant to step out of the vehicle during the lawful stop of the vehicle; and (3) the officer had reasonable suspicion of criminal activity since the officer saw defendant moving from side to side inside the vehicle and also recognized defendant as someone who had been identified to police as a drug dealer.

2. **Search and Seizure— exceeding scope of consent—inspecting defendant's genitals**

   An officer's search exceeded the scope of defendant's consent, and defendant is entitled to a new trial on charges of possession with intent to sell or deliver cocaine, because: (1) the offi-

STATE v. STONE

[179 N.C. App. 297 (2006)]

cer inspected defendant's genitals after he simply obtained general consent to search defendant's person; (2) given the scope of the officer's first search of defendant, a reasonable person would not have expected the second search to entail such an intrusive genital inspection; (3) the fact that defendant did not expressly limit the scope of the second search does not make the second search reasonable; (4) defendant's reaction demonstrated that he could not reasonably have expected the excessive scope of the officer's second search; (5) the officer's testimony demonstrated that he did not have any reason to suspect that defendant was concealing weapons or contraband near his genitals, and the officer had already conducted a full search of defendant's person which had not uncovered any weapons or contraband when he conducted an inspection of defendant's genitals; (6) the officer's discovery of cash in defendant's pocket, while suspicious, did not authorize the officer to proceed with such an intrusive search; (7) the trial court did not make any findings that the two officers attempted to shield defendant's genitals from view; and (8) a reasonable person would not have expected police to pull his pants away from his body and expose his genitals in a parking lot of an apartment complex even if the encounter with police occurred in the early morning hours.

Judge STEELMAN concurring in part and dissenting in part.

Appeal by defendant from order on defendant's motion to suppress entered 16 December 2004 by Judge Albert Diaz and from judgment dated 22 March 2005 by Judge J. Gentry Caudill in Superior Court, Mecklenburg County. Heard in the Court of Appeals 7 June 2006.

*Attorney General Roy Cooper, by Special Deputy Attorney General Douglas A. Johnston, for the State.*

*Jarvis John Edgerton, IV for defendant-appellant.*

McGEE, Judge.

Timothy Stone (defendant) was convicted of possession with intent to sell or deliver cocaine and of having attained the status of habitual felon. The trial court sentenced defendant to 130 months to 165 months in prison.

Defendant filed a motion to suppress evidence in August 2003, arguing he was entitled to "an order suppressing any and all evidence obtained during a search of the person of defendant on October 7, 2002, for the reason that such evidence was obtained as a result of the illegal search and seizure of defendant by Officer R.E. Correa of the Charlotte-Mecklenburg Police Department[]" (Officer Correa). The trial court conducted a suppression hearing on 8 December 2004 and in an order filed 16 December 2004, denied defendant's motion to suppress.

In its order denying defendant's motion to suppress, the trial court made the following uncontested findings of fact:

1. At approximately 3:30 a.m. on October 7, 2002, [Officer Correa] was on routine patrol in the Nations Ford area of Charlotte, North Carolina.

2. [Officer] Correa has been a CMPD officer for over six years. The Nations Ford area is part of the Steel Creek Division, where he has worked for three years. This particular area has a high incidence of drug and prostitution offenses.

3. On this date, [Officer] Correa noticed a burgundy Oldsmobile [(the vehicle)] leaving the Villager Lodge motel. . . .

4. [Officer] Correa began following the [vehicle]. The [vehicle] accelerated and turned right onto Farmhurst Drive. [Officer] Correa estimated that the [vehicle] was traveling at 50 mph, approximately 15 mph over the speed limit. [Officer] Correa, however, did not activate his blue lights or make any effort to stop the [vehicle].

5. The [vehicle] pulled into the parking lot of an apartment complex on Farmhurst Drive. [Officer] Correa pulled in directly behind the [vehicle] and shone his spot light on the vehicle.

6. [Officer] Correa saw two people in the [vehicle]. He also saw that the vehicle's license plate was displayed on the rear window instead of the bumper. Finally, he noticed that the passenger (in this case, . . . [d]efendant) was moving from side to side.

7. [Officer] Correa approached the driver's side window. The driver appeared very nervous, his hands were shaking, and he would not look at [Officer] Correa.

. . .

10. [Officer] Correa then turned his attention to . . . [d]efendant, who was not wearing a seatbelt. [Officer] Correa recognized . . . [d]efendant, having previously received an anonymous tip that [d]efendant was a drug dealer. He asked [d]efendant for identification, but he could not produce one.

11. [Officer] Correa asked [d]efendant to step to the back of the vehicle. Defendant complied. [Officer] Correa asked [d]efendant if he had any drugs or weapons on his person. Defendant said no, which prompted [Officer] Correa to ask for consent to search. Defendant gave consent.

12. Defendant was wearing a jacket and a pair of drawstring sweat pants.

13. During the initial search, [Officer] Correa found $552.00 in cash in the lower left pocket of [d]efendant's sweat pants. After advising [d]efendant that it was not safe to carry such a large amount of cash in that manner as it could easily fall out, [Officer] Correa again asked [d]efendant if he had anything on him. Once again, [d]efendant denied having drugs or weapons and authorized [Officer] Correa to continue the search. By this time, Officer Gerson Herrera [(Officer Herrera)] had arrived as the backup officer.

14. [Officer] Correa checked the rear of [d]efendant's sweat pants and then moved his hands to the front of [d]efendant's waistband. At that point, [Officer] Correa pulled [d]efendant's sweat pants away from his body and trained his flashlight on . . . [d]efendant's groin area. Defendant objected, but by that time, both [Officer] Correa and [Officer] Herrera had already seen the white cap of what appeared to be a pill bottle tucked in between [d]efendant's inner thigh and testicles.

15. [Officer] Correa has made several arrests in the past after finding drugs concealed in a suspect's groin area. He immediately suspected that the pill bottle contained contraband. As a result, he and [Officer] Herrera grabbed the protesting [d]efendant and handcuffed him. [Officer] Correa then retrieved the pill bottle from [d]efendant's groin area.

16. Inside the bottle were approximately 130 rocks of crack cocaine weighing 26 grams.

The trial court concluded that Officer Correa " 'seized' the occupants of the [vehicle] when he pulled in behind them in the apartment parking lot[,]" and that Officer Correa's traffic stop of the vehicle "was based on a 'reasonable suspicion' (if not probable cause) that the driver had been speeding (in violation of N.C. Gen. Stat. § 20-141(b)) and was not properly displaying the vehicle's license tag (in violation of N.C. Gen. Stat. § 20-63(d))." The trial court further concluded that Officer Correa "did not violate [d]efendant's constitutional rights by asking him to step out of the [vehicle]." The trial court also concluded that "[b]efore seeking [d]efendant's consent to search, [Officer] Correa asked [d]efendant whether he had any drugs or weapons on his person. Thus, [d]efendant was on notice as to what [Officer] Correa would be looking for during a search." The trial court concluded that "although [Officer] Correa's search was intrusive, in the absence of [d]efendant placing any particular limit on the scope of the search, the Court finds that it was reasonable." The trial court further concluded as follows:

13. Additionally, the relevant attendant circumstances, including [Officer] Correa's prior sighting of the [vehicle] in a high drug area, the anonymous tip that [d]efendant was a drug dealer, the time of night, the driver's evasive demeanor and responses, and the large wad of cash found on [d]efendant's person, gave [Officer] Correa sufficient reason to suspect that [d]efendant might be hiding contraband and/or weapons somewhere on his person, including his groin area.

14. The search itself was limited and focused (in that the police did not remove or lower [d]efendant's pants), and took place in a private apartment complex parking lot during the early morning hours, with no opportunity for onlookers (other than the police) to gawk at . . . [d]efendant. On these facts, the Court finds that [Officer] Correa did not unlawfully impinge on [d]efendant's privacy interests.

The evidence introduced at trial was substantially similar to the evidence introduced at the suppression hearing. Defendant appeals.

---

Where a defendant has "failed to assign error to any findings of fact, our review [of the denial of a motion to suppress] is limited to the question of whether the trial court's findings of fact, which are presumed to be supported by competent evidence, support its conclusions of law and judgment." *State v. Pickard*, 178 N.C. App. 330,

334, 631 S.E.2d 203, 206 (2006). We apply *de novo* review to a trial court's conclusions of law. *State v. Hernandez*, 170 N.C. App. 299, 304, 612 S.E.2d 420, 423 (2005).

I.

[1] Defendant argues the trial court erred by concluding that (1) Officer Correa seized the occupants of the vehicle when he pulled behind the vehicle and (2) Officer Correa did not violate defendant's constitutional rights by asking defendant to step out of the vehicle. "The Fourth Amendment to the Constitution of the United States and Section 20 of Article I of the North Carolina Constitution prohibits unreasonable searches and seizures." *State v. Sanchez*, 147 N.C. App. 619, 623, 556 S.E.2d 602, 606 (2001), *disc. review denied*, 355 N.C. 220, 560 S.E.2d 358 (2002). The prohibition against unreasonable searches and seizures applies to " 'seizures of the person, including brief investigatory detentions such as those involved in the stopping of a vehicle.' " *Id.* (quoting *State v. Watkins*, 337 N.C. 437, 441, 446 S.E.2d 67, 69-70 (1994)).

"An investigatory stop must be justified by 'a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity.' " *Watkins*, 337 N.C. at 441, 446 S.E.2d at 70 (quoting *Brown v. Texas*, 443 U.S. 47, 51, 61 L. Ed. 2d 357, 362 (1979)). "Similarly, an officer may frisk a person where the officer reasonably suspects that 'criminal activity may be afoot and that the [person] with whom he is dealing may be armed and presently dangerous[.]' " *State v. Shearin*, 170 N.C. App. 222, 226, 612 S.E.2d 371, 375 (quoting *Terry v. Ohio*, 392 U.S. 1, 30, 20 L. Ed. 2d 889, 911 (1968)), *disc. review denied*, 360 N.C. 75, 624 S.E.2d 369 (2005). In determining whether reasonable suspicion existed for a stop or frisk, a trial court must consider the totality of the circumstances. *Shearin*, 170 N.C. App. at 226, 612 S.E.2d at 376. Police may order passengers from a vehicle when they have made a lawful traffic stop of the vehicle. *State v. Pulliam*, 139 N.C. App. 437, 440-41, 533 S.E.2d 280, 283 (2000) (citing *Maryland v. Wilson*, 519 U.S. 408, 137 L. Ed. 2d 41 (1997)).

In the present case, the unchallenged findings of fact show that Officer Correa observed the vehicle driving in excess of the speed limit. Officer Correa pulled behind the vehicle and shined his spot light on the vehicle. He saw that the vehicle's license plate was displayed in the rear window, rather than on the bumper. Officer Correa therefore had reasonable suspicion, if not probable cause, to believe that two traffic violations had occurred.

However, defendant argues the trial court erred by concluding that Officer Correa " 'seized' the occupants of the [vehicle] when he pulled behind them in the apartment parking lot." In support of his argument, defendant cites *State v. Foreman*, 133 N.C. App. 292, 515 S.E.2d 488 (1999), *aff'd as modified*, 351 N.C. 627, 527 S.E.2d 921 (2000). In *Foreman*, the defendant was convicted of driving while impaired. *Id.* at 293, 515 S.E.2d at 490. The evidence at trial showed that a vehicle traveling towards a DWI checkpoint made a quick left turn before the checkpoint, at an intersection where a "DWI Checkpoint Ahead" sign was displayed. *Id.* An officer witnessed this action and began following the vehicle. *Id.* The officer saw the vehicle make another abrupt turn and lost sight of the vehicle. *Id.* The officer found the vehicle parked in a driveway and pulled behind the vehicle. *Id.* at 294, 515 S.E.2d at 490. The officer turned on his takedown lights and saw people scrunched down in the vehicle. *Id.* The vehicle's engine was turned off and the doors were closed. *Id.* at 294, 515 S.E.2d at 490-91. The officer called for backup and continued to watch the vehicle. *Id.* at 294, 515 S.E.2d at 491. Once backup arrived, the officer approached the vehicle, and saw the defendant in the driver's seat. *Id.*

Our Court held that the defendant "was seized, at the earliest, when backup arrived." *Id.* at 297, 515 S.E.2d at 493. Our Court also held that the facts available to the officer before the seizure were "sufficient to raise a reasonable and articulable suspicion of criminal activity." *Id.* at 298, 515 S.E.2d at 493. Our Supreme Court affirmed our Court's decision that the officer had reasonable suspicion of criminal activity, but held that the defendant was not seized until the officer approached the vehicle. *Foreman*, 351 N.C. at 630, 527 S.E.2d at 923.

In the present case, whether Officer Correa seized the occupants of the vehicle when he pulled behind them or when he approached the vehicle, Officer Correa had reasonable suspicion of two traffic violations and lawfully conducted a brief detention of the occupants of the vehicle. Defendant also argues the trial court erred by concluding that Officer Correa did not violate defendant's constitutional rights by asking defendant to step out of the vehicle. However, pursuant to *Pulliam*, Officer Correa was justified in asking defendant to step out of the vehicle during Officer Correa's lawful stop of the vehicle. *See Pulliam*, 139 N.C. App. at 440-41, 533 S.E.2d at 283. Moreover, Officer Correa did have reasonable suspicion of criminal activity because Officer Correa saw defendant moving from side to

side inside the vehicle and also recognized defendant as someone who had been identified to police as a drug dealer. Accordingly, the trial court did not err.

## II.

[2] Defendant also argues the trial court erred by concluding that Officer Correa's search did not exceed the scope of defendant's consent. We agree. "Generally, the Fourth Amendment and article I, § 20 of the North Carolina Constitution require issuance of a warrant based on probable cause for searches. However, our courts recognize an exception to this rule when the search is based on the consent of the detainee." *State v. Jones*, 96 N.C. App. 389, 397, 386 S.E.2d 217, 222 (1989) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 36 L. Ed. 2d 854, 858 (1973) and *State v. Belk*, 268 N.C. 320, 322, 150 S.E.2d 481, 483 (1966)), *disc. review denied*, 326 N.C. 366, 389 S.E.2d 809 (1990).

"The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness-what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Florida v. Jimeno*, 500 U.S. 248, 251, 114 L. Ed. 2d 297, 302 (1991). In the context of a search upon probable cause, the United States Supreme Court has stated that the test of reasonableness "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell v. Wolfish*, 441 U.S. 520, 559, 60 L. Ed. 2d 447, 481 (1979).

In the present case, Officer Correa asked defendant if he had any drugs or weapons on his person, and defendant said he did not. Officer Correa asked for consent to search defendant and defendant gave consent. Officer Correa searched defendant and found $552.00 in cash in a pocket of defendant's pants. Officer Correa advised defendant it was not safe to carry that much cash and again asked defendant if he had any drugs or weapons. Defendant said he did not and again gave Officer Correa consent to search his person. Officer Correa pulled defendant's sweat pants away from defendant's body and "trained his flashlight on . . . [d]efendant's groin area." Defendant objected, but Officer Correa had already seen a white pill bottle cap "tucked in between [d]efendant's inner thigh and testicles."

We conclude that Officer Correa exceeded the scope of defendant's consent when he inspected defendant's genitals. First, Officer Correa did not obtain specific consent to visually inspect defendant's genitals. Officer Correa simply obtained general consent to search defendant's person. Second, given the scope of Officer Correa's first search of defendant, a reasonable person would not have expected the second search to entail such an intrusive genital inspection. Third, the fact that defendant did not expressly limit the scope of the second search does not make the second search reasonable. Defendant could not reasonably have expected that Officer Correa would visually inspect defendant's genitals. Therefore, defendant had no reason to limit the scope of the second search. This is further demonstrated by defendant's reaction when Officer Correa pulled defendant's sweat pants away from defendant's body and trained his flashlight on defendant's genitals. Defendant objected to this intrusion; however, the trial court found that Officer Correa had already seen the white cap of the pill bottle. Nevertheless, defendant's reaction demonstrates that he could not reasonably have expected the excessive scope of Officer Correa's second search.

We also examine Officer Correa's justification for the search. Although the trial court concluded that the attendant circumstances "gave [Officer] Correa sufficient reason to suspect that [d]efendant might be hiding contraband and/or weapons somewhere on his person, including his groin area[,]" this conclusion was erroneous. At the suppression hearing, Officer Correa testified that when he asked for consent to search defendant a second time, he "was not really expecting to find anything, honestly." Officer Correa also testified on cross-examination that "[w]hen I ask if I can search, I check everywhere. That's just standard procedure, that's just the way I was taught, that you search everywhere because drugs, guns, money, weapons, anything can be concealed under their clothing as well." Officer Correa's testimony demonstrates that he did not have any reason to suspect that defendant, in particular, was concealing weapons or contraband near his genitals. Rather, Officer Correa conducted genital searches as a matter of course. Furthermore, Officer Correa had already conducted a full search of defendant's person, which had not uncovered any weapons or contraband, when he conducted an inspection of defendant's genitals. Because Officer Correa's first full search did not uncover any weapons or contraband, Officer Correa reasonably did not expect to find anything on his second search, and accordingly had little justification for conducting a visual inspection of defendant's genitals. Officer Correa's discovery of the cash in defendant's pocket,

while suspicious, did not authorize Officer Correa to proceed with such an intrusive search.

The trial court also concluded that "[t]he search itself was limited and focused (in that the police did not remove or lower [d]efendant's pants), and took place in a private apartment complex parking lot during the early morning hours, with no opportunity for onlookers (other than the police) to gawk at . . . [d]efendant." However, the trial court did not make any findings that Officer Correa or Officer Herrera attempted to shield defendant's genitals from view. A reasonable person would not have expected police to pull his pants away from his body and expose his genitals in a parking lot of an apartment complex, even if the encounter with police occurred in the early hours of the morning.

In view of the factors examined above, we conclude that a reasonable person in defendant's circumstances would not have understood that he would be subjected to an inspection of his genitals. *See Jimeno*, 500 U.S. at 251, 114 L. Ed. 2d at 302. We further conclude that the need for an inspection of defendant's genitals was outweighed by the significant invasion of defendant's personal rights. *See Bell*, 441 U.S. at 559, 60 L. Ed. 2d at 481. Accordingly, we hold that the trial court erred by denying defendant's motion to suppress and defendant is entitled to a new trial.

New trial.

Judge ELMORE concurs.

Judge STEELMAN concurs in part and dissents in part with a separate opinion.

STEELMAN, Judge, concurring in part and dissenting in part.

I concur with the first portion of the majority opinion affirming the trial court's ruling as to the stop of the vehicle. However, I must respectfully dissent from the second part of the opinion with regard to the scope of defendant's consent to Officer Correa's search.

The two pertinent questions with respect to this issue are: (1) whether the search of defendant constituted a strip search, thus requiring specific consent; or (2) whether the search, if not a strip search, was objectively reasonable such that it did not exceed the defendant's scope of consent.

**STATE v. STONE**

[179 N.C. App. 297 (2006)]

Appellant does not argue that any of Judge Diaz's findings of fact are erroneous. This Court is therefore bound by these findings and our review is limited to whether the conclusions of law are supported by the findings of fact. *State v. Tate*, 300 N.C. 180, 184, 265 S.E.2d 223, 226 (1980). The trial judge found that defendant gave consent to search his person on two separate occasions, one before Officer Correa found $552.00 in defendant's pocket and one after. The trial judge also found that "[a]t no time prior to Correa and Herrera finding the pill bottle in [d]efendant's underwear did the [d]efendant limit the scope of either search."

## I: Strip Search

"A search of the person may range from a Terry-type pat-down to a generalized search of the person to the more intrusive strip search or body cavity search." *Hughes v. Commonwealth*, 31 Va. App. 447, 455, 524 S.E.2d 155, 159 (2000). "These three categories [pat-downs, strip searches, and body cavity searches] are subject to different standards because of the varying degrees of intrusion that they entail." *United States v. De Gutierrez*, 667 F.2d 16, 19 (5th Cir. 1982). Courts have consistently held pat-downs and generalized searches of the person are within the scope of a consent search, but the heightened intrusions of strip searches and cavity searches are objectively unreasonable unless supported by probable cause or specific consent. *See, e.g., United States v. Rodney*, 956 F.2d 295 (D.C. Cir. 1992); *Johnson v. State*, 613 So. 2d 554 (Fla. 1993); *Hughes*, 31 Va. App. 447, 524 S.E.2d 155.

Although many states have statutory definitions for "strip search," our legislature has not chosen to define this term. *Cf. Amaechi v. West*, 237 F.3d 356, 365 (4th Cir. 2001). Neither the United States Supreme Court nor the appellate courts of North Carolina have defined the term "strip search." Because other states' statutes are not binding upon our courts and there is no common law definition within North Carolina, "we must give it that meaning generally recognized by lexicographers." *Clinard v. White*, 129 N.C. 182, 183, 39 S.E. 960, 960 (1901). Strip search is defined as "[a] search of a person conducted after that person's clothes have been removed, the purpose usu. being to find any contraband the person might be hiding." BLACK'S LAW DICTIONARY 1378 (8th ed. 2004).

In the instant case, the trial court in its findings described the search of the defendant:

Correa checked the rear of Defendant's sweat pants and then moved his hands to the front of Defendant's waistband. At that point, Correa pulled Defendant's sweat pants away from his body and trained his flashlight on the Defendant's groin area. Defendant objected, but by that time, both Correa and Herrera had already seen the white cap of what appeared to be a pill bottle tucked in between Defendant's inner thigh and testicles.

Applying the aforementioned definition of strip search, the facts as found by the trial court show that there was no removal of defendant's clothing during Officer Correa's search of defendant. Officer Correa only "pulled [d]efendant's sweat pants away from his body" without removing them. Therefore, I conclude that Officer Correa's search of defendant did not rise to the level of a strip search, and therefore, the specific consent of defendant to perform a strip search was not required.

## II: Scope of Consent

"Generally, the Fourth Amendment and article I, § 20 of the North Carolina Constitution require issuance of a warrant based on probable cause for searches. However, our courts recognize an exception to this rule when the search is based on the consent of the detainee." *State v. Jones*, 96 N.C. App. 389, 397, 386 S.E.2d 217, 222 (1989) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 36 L. Ed. 2d 854, 858 (1973)). " 'The scope of the search can be no broader than the scope of the consent.' " *State v. Johnson*, 177 N.C. App. 122, 124, 627 S.E.2d 488, 490 (2006) (quoting *State v. Jones*, 96 N.C. App. 389, 397, 386 S.E.2d 217, 222 (1989)). " 'When an individual gives a general statement of consent without express limitations, the scope of a permissible search is not limitless. Rather it is constrained by the bounds of reasonableness[.]' " *Johnson*, 177 N.C. App. at 125, 627 S.E.2d at 490 (quoting *United States v. Strickland*, 902 F.2d 937, 941 (11th Cir. 1990)). "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness— what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Johnson*, 177 N.C. App. at 125, 627 S.E.2d at 490 (quoting *Florida v. Jimeno*, 500 U.S. 248, 251, 114 L. Ed. 2d 297, 302 (1991) (holding that it was "objectively reasonable for the officer to believe that the scope of the suspect's consent permitted him to open a particular container within [an] automobile")). "The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the partic-

ular search against the invasion of personal rights that the search entails." *Bell v. Wolfish*, 441 U.S. 520, 559, 60 L. Ed. 2d 447, 481 (1979). In determining whether a search is reasonable under the Fourth Amendment, a court must balance "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Wolfish*, 441 U.S. at 559, 60 L. Ed. 2d at 481. "[S]earches akin to strip searches can be justified in public places if limited in scope and required by unusual circumstances." *State v. Smith*, 118 N.C. App. 106, 117, 454 S.E.2d 680, 687 (1995) (*Walker, J., concurring in part and dissenting in part*) (emphasizing that the availability of "less intrusive means does not automatically transform an otherwise reasonable search into a Fourth Amendment violation"), *rev'd per curiam per dissent*, 342 N.C. 407, 464 S.E.2d 45 (1995), *cert. denied*, 517 U.S. 1189, 134 L. Ed. 2d 779 (1996).

Furthermore, "[t]he scope of a search is generally defined by its expressed object." *Jimeno*, 500 U.S. at 251, 114 L. Ed. 2d at 303; *see also, United States v. Zapata*, 180 F.3d 1237, 1243 (1999) (stating that "[t]o ascertain what conduct is within the 'bounds of reasonableness,' we must consider what the parties knew to be the object (or objects) of the search"). Because "[d]ealers frequently hide drugs near their genitals[,]" the reasonable person would understand that "a request to conduct a body search for drugs reasonably includes a request to conduct *some search* of [the genital] area." *Rodney*, 956 F.2d at 297-98 (emphasis added). The court in *Rodney* explained the meaning of "*some search*":

> Although *Jimeno* states the test "generally" used to determine the scope of a consent to search, we doubt that the Supreme Court would have us apply that test unflinchingly in the context of body searches. At some point, we suspect, a body search would become so intrusive that we would not infer consent to it from a generalized consent, regardless of the stated object of the search. For example, although drugs can be hidden virtually anywhere on or in one's person, a generalized consent to a body search for drugs surely does not validate everything up to and including a search of body cavities.

*Rodney*, 956 F.2d at 298.

In *Rodney*, the Court nonetheless found the police did not exceed the scope of the search allowed by the suspect's generalized consent in the following circumstances:

> [The policeman] asked Rodney whether he was carrying drugs on
> his person. After Rodney again said no, [the policeman] requested
> permission to conduct a body search. Rodney said "sure" and
> raised his arms above his head. [The policeman] placed his hands
> on Rodney's ankles and, in one sweeping motion, ran them up the
> inside of Rodney's legs. As he passed over the crotch area, [the
> policeman] felt small, rock-like objects. Rodney exclaimed:
> "That's me!" Detecting otherwise, [the policeman] placed Rodney
> under arrest.

*Rodney,* 956 F.2d at 296. The Court in *Rodney* concluded that the
search undertaken "was not unusually intrusive, at least relative to
body searches generally. It involved a continuous sweeping motion
over Rodney's outer garments, including the trousers covering his
crotch area. In this respect, the search was no more invasive than the
typical pat-down frisk for weapons described by the Supreme Court
over two decades ago[.]" *Rodney,* 956 F.2d at 298 (D.C. Cir. 1992). The
Court in *Rodney* described this search as "the sort of careful frisk
described in *Terry v. Ohio*[.]" *Rodney,* 956 F.2d at 296 (quoting *Terry,*
392 U.S. at 17, 20 L. Ed. 2d at 903 n.13 ("The officer must feel with sen-
sitive fingers every portion of the [defendant's] body. A thorough
search must be made of the [defendant's] arms and armpits, waistline
and back, the groin and area about the testicles, and entire surface of
the legs down to the feet." (citation omitted)). Ultimately, the Court
in *Rodney* concluded that the consent search of the suspect was
objectively reasonable. *Rodney,* 956 F.2d at 298.

In the instant case, this Court must decide whether the police
exceeded the scope of a suspect's generalized consent with regard to
a search of his body for drugs by pulling back the suspect's pants for
a brief moment and visually examining his genital region. Officer
Correa was familiar with the practice of drug dealers hiding drugs
near their genitals. He had "made several arrests in the past after find-
ing drugs concealed in a suspect's groin area." After asking defendant
if he had any drugs or weapons on his person, Officer Correa asked
whether he could search defendant's body, and defendant consented.
In the trial court's conclusions of law, the court stated that because of
the officer's questions, defendant was on notice as to what Officer
Correa would be looking for during the search.[1] Officer Correa
"asked him [for consent to search] twice. The first time I asked for

---

1. *See Hensley v. Industrial Maint. Overflow,* 166 N.C. App. 413, 419 n.1, 601
S.E.2d 893, 898 n.1 (2004) (stating that "[f]indings of fact that are mislabeled conclu-
sions of law are, nonetheless, factual findings."); citing *Gainey v. N.C. Dept. of Justice,*
121 N.C. App. 253, 257 n.1, 465 S.E.2d 36, 40 n.1 (1996)).

consent to pat down and search. The second time I asked him if he had anything on him that I needed to know about." Officer Correa testified that he asked, "do you mind if I search[,] and he said no, go ahead." Officer Correa did not ask defendant to remove his clothes, nor did Officer Correa remove defendant's clothes. Neither were defendant's genitals, nor any private part of defendant's body, exposed to anyone except police officers of the same sex as defendant, and defendant's genitals were only exposed to Officer Correa and Officer Herrera for a fleeting moment. The search itself was limited and focused on hidden contraband in the groin area and took place in a private apartment complex parking lot during the early morning hours, with no opportunity for any onlookers. *See Smith*, 118 N.C. App. at 117, 454 S.E.2d at 687; *United States v. Bazy*, 1994 WL 539300 (D. Kan. 1994) (holding that a trooper's search of defendant's underwear to remove crack cocaine was reasonable because defendant was not required to remove clothing or submit to visual body cavity search, and because public view was blocked by defendant's clothes, troopers and patrol cars). The attendant circumstances, including the anonymous tip that defendant was a drug dealer, the time of night, the high drug area, the large amount of cash found on defendant, and the suspicious actions of defendant and the driver, considered in the aggregate, are sufficient to support the conclusion that the search conducted by Officers Correa and Herrera was objectively reasonable.

When balancing "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted," I find the search of defendant to be objectively reasonable and within the scope of defendant's consent. *Wolfish*, 441 U.S. at 559, 60 L. Ed. 2d at 481. For these reasons, I would affirm the trial court's denial of defendant's motion to suppress evidence.