CHERYL LINDEMANN WHITE, Petitioner v. LYNDO TIPPETT, STATE OF NORTH CAROLINA, SECRETARY, DEPARTMENT OF TRANSPORTATION, Respondent

No. COA07-70

(Filed 20 November 2007)

## 1. Search and Seizure— traffic checkpoint—stop after evasion—constitutionality of checkpoint not in issue

Although petitioner (whose license had been suspended for refusing an intoxilizer test) argued that the trial court erred by concluding that a checkpoint was established constitutionally,

petitioner was not stopped at the checkpoint and the validity of the checkpoint was not in issue.

**2. Search and Seizure— driving while impaired—reasonable grounds for stop**

A Highway Patrol Trooper had reasonable grounds to believe that a driver had committed an implied consent offense (driving while impaired) from a combination of the driver's evasion of a checkpoint, the odor of alcohol surrounding the driver, and a brief conversation with the driver.

**3. Motor Vehicles— intoxilizer test—waiting period for calling attorney—intent to call attorney—clear expression required**

The thirty-minute grace period for calling an attorney before taking an intoxilizer test applies only where a petitioner intends to exercise her right to call an attorney and expresses that right clearly. Here, petitioner by her own admission gave no clear indication that she wanted to call an attorney and the officer was not required to wait the full thirty minutes before administering the test.

Appeal by petitioner from judgment entered 19 July 2006 by Judge Robert C. Ervin in Mecklenburg County Superior Court. Heard in the Court of Appeals 28 August 2007.

*The Law Office of David L. Hitchens, PLLC, by David L. Hitchens, for petitioner-appellant.*

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Kathryne E. Hathcock, for respondent-appellee.*

HUNTER, Judge.

Cheryl White ("petitioner") appeals from a judgment entered on 19 July 2006 sustaining the twelve-month suspension of her driving privileges. After careful review, we affirm.

On 29 April 2005, Trooper E. B. Miller of the North Carolina State Highway Patrol was in the area of East John Street and Interstate 485 in Mecklenburg County when he saw several police officers conducting a checkpoint, so he pulled over to assist them. At 12:25 a.m., petitioner approached the checkpoint in the westbound lane of John Street, which was unblocked by vehicles or officers. At this point only

Trooper Miller and one other officer, a Matthews Police Department officer, remained at the checkpoint. The Matthews police officer indicated to petitioner to stop her car next to the front bumper of the police car in the median of the road. That officer then turned away to resume her examination of a driver whom she had just stopped in the eastbound lane.

Trooper Miller testified that he then began to walk toward petitioner's car. For fifteen to twenty seconds, as he was "getting ready to walk around the patrol car" to speak with her, petitioner sat stopped in her car. At that point, before Trooper Miller reached her, she drove off down the road. Trooper Miller ran to his patrol car and pursued her.

As Trooper Miller followed, petitioner drove approximately one tenth of a mile down East John Street and turned into the driveway of her home. Trooper Miller stated that the speed limit is forty-five miles per hour at the spot where the checkpoint was located, then drops to thirty-five miles per hour between there and petitioner's home. He testified that in that tenth of a mile petitioner attained a speed of approximately forty miles per hour.

Trooper Miller followed petitioner into her driveway, where he found her still seated in the driver's seat of the car. Trooper Miller asked her to exit the vehicle, noticed her eyes were glassy and red, and smelled the odor of alcohol. He then administered two Alcosensor tests five minutes apart, and on each petitioner registered a .10. He then placed her under arrest and took her to the Matthews Police Department. There, he asked her to take a test on an intoxilizer; she agreed, but failed to follow his instructions on how to do so for several minutes, until the test ran out. This happened twice, at which point Trooper Miller marked her down as having willfully refused to take the test.

Petitioner's driving privileges were suspended by the North Carolina Division of Motor Vehicles for twelve months due to her willful refusal to submit to the intoxilizer test. She petitioned the Mecklenburg County Superior Court for review of this decision, and on 19 July 2006 the court upheld the suspension. Petitioner now appeals to this Court.

I.

"The scope of an appellate review of a trial court's order affirming or reversing a final agency's decision is governed by G.S. Sec.

150B-52. This Court must determine whether the trial court committed any errors of law." *In re Appeal of Coastal Resources Comm'n Decision*, 96 N.C. App. 468, 472, 386 S.E.2d 92, 94 (1989). Where, as here, "it is alleged that the agency's decision was based on an error of law, then *de novo* review is required." *In re Appeal of Ramseur*, 120 N.C. App. 521, 524, 463 S.E.2d 254, 256 (1995); *see also Eury v. N.C. Employment Security Comm.*, 115 N.C. App. 590, 598, 446 S.E.2d 383, 388 (1994) (conducting *de novo* review where "the assignments of error . . . presented errors of law").

## II.

Petitioner makes two related arguments as to her stop and arrest: First, that the checkpoint was unconstitutional, and second, that the officer lacked reasonable grounds to believe she had committed the offense for which she was arrested. We address each of these in turn.

## A.

[1] Petitioner first argues that the trial court erred by concluding that the checkpoint at issue was established for the constitutional purpose of examining driver's licenses and registrations. We disagree.

Petitioner's argument on this point is rooted mainly in the case of *State v. Rose*, 170 N.C. App. 284, 612 S.E.2d 336 (2005). We considered the implications of *Rose* for the requirements for checkpoints in *State v. Burroughs*, 185 N.C. App. 496, 648 S.E.2d 561 (2007). There, we considered the same argument petitioner makes here: That the court did not inquire closely enough as to the primary programmatic purpose of the checkpoint. Petitioner's argument is without merit.

This central holding of *Rose* and *Burroughs* concerns the constitutionality of certain types of checkpoints, and thus applies only where the petitioner or defendant has in fact been stopped at a checkpoint. Here, petitioner was not stopped at the checkpoint, and as such her argument based on these cases is irrelevant. While the validity of the checkpoint is not at issue here, petitioner's avoidance of the checkpoint is relevant to her next argument, and as such we address it below.

## B.

[2] Petitioner further argues that the trial court erred by concluding that the trooper had reasonable grounds to believe that petitioner had committed an implied consent offense.

We find a case cited by both parties, *State v. Foreman*, 133 N.C. App. 292, 515 S.E.2d 488 (1999), *aff'd as modified*, 351 N.C. 627, 527 S.E.2d 921 (2000) to be precisely on point. There, the defendant made a quick, legal left turn at an intersection where a " 'DWI Checkpoint Ahead' " sign was displayed. *Id.* at 293, 515 S.E.2d at 490. An officer associated with the checkpoint noticed this and pursued the defendant, finding him still in his vehicle parked in a driveway. *Id.* at 293-94, 515 S.E.2d at 490-91. Once back-up arrived, the officer approached the car, found the defendant in the driver's seat, and smelled the odor of alcohol. *Id.* at 294, 515 S.E.2d at 491.

We summarized the holding of *Foreman* in *State v. Stone*, 179 N.C. App. 297, 634 S.E.2d 244 (2006):

Our Court . . . held that the facts available to the officer before the seizure were "sufficient to raise a reasonable and articulable suspicion of criminal activity." *Id.* at 298, 515 S.E.2d at 493. Our Supreme Court affirmed our Court's decision that the officer had reasonable suspicion of criminal activity, but held that the defendant was not seized until the officer approached the vehicle. *Foreman*, 351 N.C. at 630, 527 S.E.2d at 923.

*Id.* at 303, 634 S.E.2d at 248. Finally, the Supreme Court concluded that

it is reasonable and permissible for an officer to monitor a checkpoint's entrance for vehicles whose drivers may be attempting to avoid the checkpoint, and it necessarily follows that an officer, in light of and pursuant to the totality of the circumstances or the checkpoint plan, may pursue and stop a vehicle which has turned away from a checkpoint within its perimeters for reasonable inquiry to determine why the vehicle turned away.

*Foreman*, 351 N.C. at 632-33, 527 S.E.2d at 924.

In the case at hand, as in *Foreman*, an officer pursued a person who had evaded—intentionally or by accident—a checkpoint and come to a stop in a residential driveway. The officer then approached the stopped car and spoke to the occupants. At that point, from a combination of the driver's evasion of a checkpoint, the odor of alcohol surrounding the driver, and a brief conversation with the driver, the officer had reasonable grounds to believe that the driver had committed an implied-consent offense. *See, e.g., State v. Tappe*, 139 N.C. App. 33, 36, 533 S.E.2d 262, 264 (2000) ("[t]o justify a warrantless arrest, it is 'not necessary to show that the offense was

actually committed, only that the officer had a reasonable ground to believe it was committed' ") (citation omitted). As such, this assignment of error is overruled.

### III.

**[3]** Finally, petitioner argues that she did not willfully refuse to submit to the intoxilizer prior to the expiration of the thirty-minute statutory grace period to obtain an attorney. This argument is without merit.

Petitioner makes this argument based on N.C. Gen. Stat. § 20-16.2(a)(6) (2005), which states:

[B]efore any type of chemical analysis is administered the person charged shall be taken before a chemical analyst authorized to administer a test of a person's breath, who shall inform the person orally and also give the person a notice in writing that:

. . .

(6) The person has the right to call an attorney and select a witness to view for him the testing procedures, but the testing may not be delayed for these purposes longer than 30 minutes from the time when the person is notified of his or her rights.

This statute lays out the four components of a "willful refusal":

A "willful refusal" occurs whenever a driver "(1) is aware that he has a choice to take or to refuse to take the test; (2) is aware of the time limit within which he must take the test; (3) voluntarily elects not to take the test; and (4) knowingly permits the prescribed thirty-minute time limit to expire before he elects to take the test."

*Mathis v. Division of Motor Vehicles*, 71 N.C. App. 413, 415, 322 S.E.2d 436, 437-38 (1984) (quoting *Etheridge v. Peters, Comr. of Motor Vehicles*, 301 N.C. 76, 81, 269 S.E.2d 133, 136 (1980)).

Petitioner admits in her brief that "it is not clear from the facts whether [she] wanted an attorney," but then argues that she should have been given the full thirty minutes to *decide whether* she wanted an attorney. This argument is without merit. Only where a petitioner intends to exercise her rights to call an attorney and expresses those rights clearly to the officer does the thirty-minute grace period apply. *See, e.g., McDaniel v. Division of Motor Vehicles*, 96 N.C. App. 495,

497, 386 S.E.2d 73, 75 (1989) (where defendant "gave no indication whatever that he intended to exercise his right to call a lawyer or have a witness present," trial court's conclusion that he willfully refused to take the breathalyzer was correct), *cert. denied*, 326 N.C. 364, 389 S.E.2d 815 (1990); *State v. Buckner*, 34 N.C. App. 447, 451, 238 S.E.2d 635, 638 (1977) (stating that statute does not require officer to wait thirty minutes to conduct breathalyzer test "when the defendant has waived the right to have a lawyer or witness present or when it becomes obvious that defendant doesn't intend to exercise this right"). Petitioner in this case by her own admission gave no clear indication that she wanted to call an attorney, and therefore the officer was not required to wait for the full thirty minutes before administering the test. As such, we overrule this assignment of error.

Because the officer had reasonable grounds that petitioner had committed an offense and was not incorrect in administering the breathalyzer test before thirty minutes had expired, we affirm the decision of the trial court upholding the suspension of petitioner's driving privileges.

Affirmed.

Judges WYNN and BRYANT concur.