STATE OF NORTH CAROLINA v. MARK ANTHONY COLLINS

No. COA11-529

(Filed 6 March 2012)

**Motor Vehicles—license checkpoint—evasion—stopped elsewhere—validity of checkpoint irrelevant**

An order in an impaired driving prosecution granting defendant's motion to suppress evidence obtained after defendant was stopped was remanded where defendant turned into a driveway short of a license checkpoint and the trial court granted the motion based on the checkpoint having been conducted without written authorization. Defendant was not stopped at the checkpoint and *White v. Tippett*, 187 N.C. App. 285, was controlling. The case was remanded for a determination of whether defendant was unconstitutionally stopped at the residence.

STATE v. COLLINS

[219 N.C. App. 374 (2012)]

Appeal by the State from order entered 23 November 2010 by Judge D. Jack Hooks, Jr. in Columbus County Superior Court. Heard in the Court of Appeals 26 October 2011.

*Attorney General Roy Cooper, by Assistant Attorney General William P. Hart, Jr., for the State.*

*The McGougan Law Firm, by Will M. Callihan, Jr., for defendant-appellee.*

GEER, Judge.

The State appeals from an order granting defendant's motion to suppress on the grounds that a checkpoint, which defendant attempted to evade, was unlawful under N.C. Gen. Stat. § 20-16.3A (2011). Under *White v. Tippett*, 187 N.C. App. 285, 652 S.E.2d 728 (2007), however, because defendant did not actually stop at the checkpoint, its invalidity was immaterial to whether an officer had sufficient reasonable suspicion when stopping defendant once defendant drove into a residential driveway to avoid the checkpoint. We, therefore, vacate the order granting the motion to suppress and remand for further findings of fact and conclusions of law on the constitutionality of the stop of defendant.

### Facts

The evidence presented by the State at the motion to suppress hearing tended to show the following. On 3 September 2008, Troopers Jeff Hammonds and Scott Floyd of the N.C. State Highway Patrol set up a checkpoint to check for individuals driving with revoked driver's licenses. They had verbal permission from their supervisor as to the pattern of checking and the location.

At approximately 3:15 p.m., defendant was driving west toward the checkpoint. About a hundred yards before the checkpoint, defendant turned left into a residential driveway. Trooper Hammonds left the checkpoint and parked behind defendant in the driveway, with lights still flashing. Trooper Hammonds followed defendant because Trooper Hammonds knew the people who lived at the residence, and defendant did not live there.

Defendant was knocking on the door when Trooper Hammonds rolled his window down and asked defendant what he was doing. Defendant said that he had heard somebody in the area was hiring, and he was trying to see if the residents of the house had a job for him. Defendant was on the porch during this conversation, standing

a distance of about 50 feet from Trooper Hammonds, but then came off the porch and walked toward the trooper.

When defendant got close to Trooper Hammonds, the trooper smelled a moderate odor of alcohol and noticed that defendant had red, glassy eyes. Trooper Hammonds asked defendant if he had a driver's license, and defendant answered affirmatively. When defendant could not produce his driver's license, he gave the trooper his son's driver's license, a credit card, a social security card, and a military ID. Defendant told Trooper Hammonds that he must have left his driver's license at home.

At that point, Trooper Hammonds asked defendant if he had been drinking and where he had been drinking. Defendant answered that he had been drinking earlier that day. Trooper Hammonds then asked defendant to come back to the highway patrol vehicle so that Trooper Hammonds could give him a road side test. The record does not clearly indicate what happened after that request although defendant was, that same day, arrested and charged with driving while impaired ("DWI") and driving with a revoked license.

Defendant was initially tried in district court where he moved to suppress all evidence obtained when defendant was stopped without reasonable articulable suspicion. Defendant further contended that the checkpoint was unconstitutional and violated policy and procedures of the N.C. State Highway Patrol. The district court denied his motion to suppress and found defendant guilty of DWI and driving with a revoked license.

On appeal to superior court, defendant renewed his motion to suppress. At the hearing on the motion, Trooper Hammonds was the only witness to testify. Defendant presented no evidence. Following the hearing, the trial court entered an order finding, as pertinent to this appeal, that Troopers Hammonds and Floyd obtained only oral permission to set up a driver's license checking station even though the Highway Patrol had a written policy adopted pursuant to N.C. Gen. Stat. § 20-16.3A that mandated written approval prior to establishing a checkpoint. Based on those findings, the trial court concluded that the checking station "was in violation of the Highway Patrol's written guidelines in that it was conducted without written authorization" and that a violation of N.C. Gen. Stat. § 20-16.3A was grounds for a motion to suppress.

The trial court then concluded that all evidence obtained as a result of the invalid checking station must be excluded. It found that

"Trooper Hammond's attention was drawn to the defendant as a result of Defendant turning left prior to reaching the unauthorized checking station. This led to the Trooper's belief and suspicion that Defendant turned left to avoid the unauthorized checking station." It then concluded that the "actions taken to avoid an unlawful checking station could not lawfully constitute reasonable suspicion to stop defendant or probable cause for any arrest."

Based on these conclusions, the trial court granted defendant's motion to suppress. On or about 6 December 2010, the State filed a certification pursuant to N.C. Gen. Stat. § 15A-979(c) (2009) that "the appeal is not taken for the purpose of delay and that the evidence is essential to the case." The State timely appealed to this Court.

## Discussion

Our review of a trial court's order on a motion to suppress "is strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). Findings of fact not challenged on appeal are binding on this Court. *State v. Brown*, 199 N.C. App. 253, 256, 681 S.E.2d 460, 463 (2009). On the other hand, the trial court's conclusions of law "must be legally correct, reflecting a correct application of applicable legal principles to the facts found." *State v. Fernandez*, 346 N.C. 1, 11, 484 S.E.2d 350, 357 (1997).

In this case, the State contends that the trial court erred in granting the motion to suppress because the validity or invalidity of the driver's license checkpoint was immaterial since defendant was not stopped at the checkpoint, but rather was stopped at a residential location before he ever got to the checkpoint. The State contends that this Court's decision in *White v. Tippett*, 187 N.C. App. 285, 652 S.E.2d 728 (2007), is controlling.

In *White*, the petitioner challenged the suspension of her driving privileges by the North Carolina Department of Motor Vehicles due to her willful refusal to submit to an intoxilizer test. *Id.* at 286, 652 S.E.2d at 729. The petitioner had stopped at a checkpoint, but, before an officer could speak with her, drove off. *Id.* at 287, 652 S.E.2d at 729. An officer followed her and, when she exited her vehicle, found her to have a smell of alcohol and red, glassy eyes. *Id.* The petitioner

was arrested when she registered a 0.10 on two Alcosenser tests and willfully refused to take an intoxilizer test. *Id.*

The petitioner made two arguments to the superior court: "First, that the checkpoint was unconstitutional, and second, that the officer lacked reasonable grounds to believe she had committed the offense for which she was arrested." *Id.* at 288, 652 S.E.2d at 729. The Court rejected the petitioner's first argument, holding that "the constitutionality of certain types of checkpoints . . . applies only where the petitioner or defendant has in fact been stopped at a checkpoint. Here, petitioner was not stopped at the checkpoint . . . ." *Id.*, 652 S.E.2d at 730.

The Court observed that "[w]hile the validity of the checkpoint is not at issue here, petitioner's avoidance of the checkpoint is relevant to her next argument" that the officer lacked reasonable grounds to believe she had committed the offense for which she was arrested. *Id.* The Court concluded as to this second issue:

> [A]n officer pursued a person who had evaded—intentionally or by accident—a checkpoint and come to a stop in a residential driveway. The officer then approached the stopped car and spoke to the occupants. At that point, from a combination of the driver's evasion of a checkpoint, the odor of alcohol surrounding the driver, and a brief conversation with the driver, the officer had reasonable grounds to believe that the driver had committed an implied-consent offense.

*Id.* at 289, 652 S.E.2d at 730.

We agree with the State that *White* is controlling. This Court squarely held that the validity of a checkpoint is not relevant in deciding whether an officer had reasonable grounds to stop a driver when the driver was not actually stopped at the allegedly invalid checkpoint. Since defendant, in this case, evaded the checkpoint, the trial court's determination that the invalidity of the checkpoint required exclusion of evidence obtained from the later stop cannot be reconciled with *White*. We must vacate the trial court's order.[1]

Although the trial court erred in its legal conclusion that the invalidity of the checkpoint ended the inquiry for purposes of the motion

---

1. As case law supports the proposition that defendant was not stopped at the checkpoint and, therefore, that the lawfulness or unlawfulness of the checkpoint is not an issue, we decline to address the State's contention that the violation of a state agency's internal guidelines was not a basis for granting a motion to suppress.

**STATE v. COLLINS**

[219 N.C. App. 374 (2012)]

to suppress, the question remains whether Trooper Hammonds had a reasonable articulable suspicion to stop defendant at the residence. *See id.* (after concluding that the validity of the checkpoint was immaterial, holding that court still needed to address whether trooper had reasonable grounds to believe an implied consent offense had occurred).

While the State contends that defendant's encounter with Trooper Hammonds was consensual, and defendant contends that Trooper Hammonds had no reasonable articulable suspicion before the investigatory stop occurred and, therefore, defendant was illegally seized, these arguments were not resolved by the trial court in its order. Although the trial court made findings of fact regarding what occurred after defendant turned into the residential driveway, those findings were made under the erroneous assumption that the invalidity of the checking station was dispositive of the motion to dismiss. It is well established that " '[f]acts found under misapprehension of the law will be set aside on the theory that the evidence should be considered in its true legal light.' " *Helms v. Rea*, 282 N.C. 610, 620, 194 S.E.2d 1, 8 (1973) (quoting *McGill v. Lumberton*, 215 N.C. 752, 754, 3 S.E.2d 324, 326 (1939)).

Consequently, we decline to address in the first instance whether Trooper Hammonds stopped defendant or had the necessary reasonable suspicion to stop defendant. Rather, we remand to the trial court for a determination whether defendant was unconstitutionally stopped at the residence. Depending on the facts that the trial court finds on remand, the court could determine that no unconstitutional stop occurred. *See State v. Foreman*, 351 N.C. 627, 632-33, 527 S.E.2d 921, 924 (2000); *State v. Bowman*, 193 N.C. App. 104, 107-08, 666 S.E.2d 831, 834 (2008). We, therefore, vacate the order and remand for further proceedings.

Reversed and remanded.

Judges STEELMAN and BEASLEY concur.